**Opinion issued August 19, 2014**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-12-01119-CR
_____

**JESSICA TATA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 180th District Court
Harris County, Texas
Trial Court Case No. 1300862

## O P I N I O N

A jury convicted appellant, Jessica Tata, of felony murder and assessed her punishment at eighty years' confinement and a $10,000 fine. In five issues, appellant argues that the trial court erred in allowing the State to amend the

indictment after the close of evidence, in denying her motion to quash the indictment, and in denying her motion to suppress evidence.

We affirm.

## Background

Appellant was the owner and operator of Jackie's Day Care, which she operated out of the home she leased from Ronald Velasco. On the afternoon of February 24, 2011, appellant had seven children ranging in age from one to three years old under her care at her home. Four of the children died as a result of a fire that day, and others were severely injured but survived.

Using appellant's cell phone records, surveillance footage, and the testimony of witnesses, the State established that appellant entered a Target store near her home at approximately 1:09 p.m. and spoke to a Target employee, Ray Menzies. Menzies testified that while appellant was taking a survey seeking customer feedback she told him that she had left grease on the stove at home and that there were children at home with only her sister, who was sleeping. Menzies told appellant that he did not think that was okay, and appellant told him she would complete the survey at a later date. Surveillance footage shows that appellant bought a drink from the food court area of the store at 1:21 p.m. and walked out of the store at 1:22 p.m.

2

Appellant's neighbors, Geoffrey Deshano and John Chestnut, were outside their home that afternoon and saw appellant drive up to her house. They testified that appellant quickly ran back out of the house calling for help because there was oil burning in the house and there were small children inside. Deshano ran toward appellant and saw smoke coming out of her open front door. Chestnut called 9-1-1 to report the fire at approximately 1:30 p.m., and he and Deshano tried to help appellant remove some of the children from the house. Chestnut could see a bright fire on the stove.

Firefighters arrived on the scene shortly thereafter and entered the house and found the kitchen area on fire. While firefighters put out the fire in the kitchen, a search and rescue team located and removed the remaining children. Various witnesses testified about appellant's behavior during this time. She told some people that she was home when the fire broke out, but she had passed out from the smoke, and, when she woke up, she tried to get some of the children out and call for help. She told other people, including investigators, that she did not know what had happened. One of the firefighters noticed that appellant appeared clean and that the collar of her shirt was still white. Another firefighter observed that appellant did not demonstrate any symptoms of smoke inhalation or other characteristics of someone who had been inside a burning structure, such as watery eyes, coughing, or the presence of soot on her person and clothing.

3

Arson investigators arrived on the scene less than two hours after the fire was reported, while firefighters were still present. Arson investigator Anita Delgadillo arrived at approximately 3:30 p.m., took exterior photographs of the house, then went inside to continue her investigation. She immediately saw a Target bag that looked out of place because it was the only item that was not covered in soot. She moved the bag out of the interior walkway and noticed that the juice in the bag was still cool to the touch. The Target bag also contained a receipt with a time stamp of 1:18 p.m., and the items listed on the receipt matched the items found in the bag and outside the house on the lawn.

Four children died in the fire, including the complainant in this case, Elias Castillo, and the other children suffered injuries including severe burns. Castillo, who was sixteen months old, died as a result of complications following smoke inhalation. Appellant was indicted for the death of Elias Castillo under the theory of felony murder. The State alleged three felonies as alternative bases for appellant's felony murder liability: felony murder in the course of abandoning a child, felony murder in the course of endangering a child, and felony murder in the course of recklessly causing serious bodily injury to a child.

Before trial, appellant moved to suppress evidence, including the Target bag seized during the initial investigation into the cause of the fire. Following a hearing, the trial court denied appellant's motion. The trial court also denied

4

appellant's motion to quash the third paragraph of her indictment, which alleged that she committed felony murder in the course of recklessly causing serious bodily injury to a child.  After trial had started, and just before the charge on guilt or innocence was read to the jury, the State made an oral motion to abandon certain language in the paragraph of the indictment that alleged felony murder in the course of abandoning a child.  The trial court granted the State's oral motion over appellant's objection, but no written memorialization of the amended indictment was included in the record on appeal.  The jury found appellant guilty of felony murder, and it assessed her punishment at eighty years' confinement and a $10,000 fine.  This appeal followed.

## Indictment

In her first four issues, appellant raises complaints regarding her indictment.

## A.     Amendment of the Indictment

In her first three issues on appeal, appellant argues that the trial court erred in allowing the State to amend the indictment after the close of evidence because: (1) the deleted language described an essential element of the alleged offense, (2) the amendment violated Texas Code of Criminal Procedure article 28.10, and (3) the amendment reduced the State's burden of proof.

The first paragraph of appellant's indictment states:

[O]n or about February 24, 2011, [appellant] did then and there unlawfully, *commit and attempt to commit the felony offense of*

5

> *abandoning a child with the intent to return*, by having care, custody and control of Elias Castillo, a child younger than fifteen years of age, by intentionally abandoning Elias Castillo under circumstances that exposed Elias Castillo to an unreasonable risk of harm, and under circumstances that a reasonable person would believe would place Elias Castillo in imminent danger of bodily injury . . . , and while in the course of and in furtherance of the commission of said offense, [appellant] did commit an act clearly dangerous to human life, namely, by leaving Elias Castillo without adult supervision in a house with a pan containing oil on top of a heated burner that started a fire causing the death of Elias Castillo.

(Emphasis added.)  After both appellant and the State had rested, prior to the trial court charging the jury, the State requested an abandonment of the phrase "and under circumstances that a reasonable person would believe would place Elias Castillo in imminent danger of bodily injury."  The trial court granted the State's oral motion over appellant's objections.  However, the record does not contain a written, modified indictment.

The Code of Criminal Procedure allows for amendment of an indictment and supplies the procedure to be followed for successful amendment.  TEX. CODE CRIM. PROC. ANN. art. 28.10 (Vernon 2006) (specifying procedures for seeking leave to amend indictment); *id.* art. 28.11 (Vernon 2006) (providing that all amendments of charging instrument "shall be made with the leave of the court and under its direction").  Neither the motion to amend nor the trial court's granting of that motion is an amendment; "rather, the two comprise the authorization for the eventual amendment of the charging instrument pursuant to [Code of Criminal

6

Procedure article 28.10].” *Riney v. State*, 28 S.W.3d 561, 566 (Tex. Crim. App. 2000) (quoting *Ward v. State*, 829 S.W.2d 787, 793 (Tex. Crim. App. 1992)); *see also Johnson v. State*, 214 S.W.3d 157, 158 (Tex. App.—Amarillo 2007, no pet.) (“[W]e note that authority holds an oral motion to amend coupled with the trial court’s decision to grant it falls short of a valid amendment under article 28.10.”); *Valenti v. State*, 49 S.W.3d 594, 597–98 (Tex. App.—Fort Worth 2001, no pet.) (holding same).

A written amendment must be submitted to the trial court and included in the record to be valid. *See Riney*, 28 S.W.3d at 565–66 (holding that physical interlineation of original indictment is acceptable method of amending indictment, as is amended photocopy of original indictment incorporated into record under direction of trial court); *Head v. State*, 299 S.W.3d 414, 437 (Tex. App.—Houston [14th Dist.] 2009, pet. ref’d) (“[T]he language of the amended indictment must be memorialized in a written document and the amendment must be granted by the trial court.”); *Aguilera v. State*, 75 S.W.3d 60, 64 (Tex. App.—San Antonio 2002, pet. ref’d) (holding that amendment to indictment was effective when trial court granted State’s motion to amend and issued order restating language from original indictment in its entirety with amendment); *see also* TEX. CONST. art. V, § 12(b) (“An indictment is a written instrument presented to a court by a grand jury charging a person with the commission of an offense.”); *Puente v. State*, 320

7

S.W.3d 352, 358 (Tex. Crim. App. 2010) ("Regardless of whether there may be legitimate ways to amend an indictment other than to make changes directly to the original indictment or to place an amended duplicate into the record, we do not believe that manual changes to a written judicial confession should suffice under any circumstances. A judicial confession in a guilty plea, even when it is reduced to writing, is decidedly *not* a charging instrument, nor may it serve as a reasonable facsimile for one.").

Here, the State made an oral request to abandon certain language in the first paragraph of appellant's indictment. The trial court granted the request on the record, over appellant's objection. However, no written document amending the indictment was incorporated into the record. Thus, the indictment was never amended, and appellant's complaints regarding the proposed amendment are groundless.[1] *See Riney*, 28 S.W.3d at 566.

We overrule appellant's first, second, and third issues.

## B. Motion to Quash

In her fourth issue, appellant argues that the trial court erred in denying her motion to quash the third paragraph of her indictment. That paragraph of appellant's indictment alleges that appellant:

---

[1] Appellant does not raise any complaints on appeal relating to submission of the charge to the jury based on the original indictment.

did then and there unlawfully, commit and attempt to commit the *felony offense of injury to a child, by recklessly causing serious bodily injury* to Elias Castillo, a child younger than fifteen years of age, and while in the course and in furtherance of that felony offense, [appellant] committed and attempted to commit an act clearly dangerous to human life, namely, by leaving Elias Castillo without adult supervision in a house with a pan containing oil on top of a heated burner that started a fire causing the death of Elias Castillo.

(Emphasis added.)

Appellant filed a motion to quash this paragraph, arguing that the State failed to give her notice as to the conduct that was alleged to have been committed recklessly as required by Code of Criminal Procedure article 21.15. The trial court denied appellant's motion to quash.[2]

### 1. Standard of Review and Relevant Law

We review a trial court's decision whether to quash an indictment under a de novo standard. *See Lawrence v. State*, 240 S.W.3d 912, 915 (Tex. Crim. App. 2007); *State v. Moff*, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004). The right to notice of pending criminal charges is set forth in both the United States and Texas constitutions. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; *Moff*, 154 S.W.3d at 601. A charging instrument must be specific enough to convey adequate notice of the nature of the accusations so that the accused may prepare a defense. *Moff*,

---

[2] The trial court appears to have denied the motion to quash on the ground that the motion was not timely presented. Appellant's attorney made a bill of exception regarding his presentment of the motion to quash, in which he testified that he did present the motion to quash in a timely manner. The State does not challenge the timeliness of the motion to quash on appeal. Accordingly, we consider the merits of the motion as briefed by both parties.

154 S.W.3d at 601; *see* TEX. CODE CRIM. PROC. ANN. arts. 21.02, .11 (Vernon 2009). Specifically, article 21.15 provides:

> Whenever recklessness or criminal negligence enters into or is a part or element of any offense, or it is charged that the accused acted recklessly or with criminal negligence in the commission of an offense, the complaint, information, or indictment in order to be sufficient in any such case must allege, with reasonable certainty, the act or acts relied upon to constitute recklessness or criminal negligence, and in no event shall it be sufficient to allege merely that the accused, in committing the offense, acted recklessly or with criminal negligence.

*Id.* art. 21.15 (Vernon 2009). An alleged inherently reckless act satisfies the requirements of article 21.15. *See Smith v. State*, 309 S.W.3d 10, 16 (Tex. Crim. App. 2010).

A person commits the offense of felony murder if, in the course of committing a felony other than manslaughter, she commits an act clearly dangerous to human life that causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(3) (Vernon 2011). Thus, the commission or attempted commission of an underlying felony is an essential element of the offense of felony murder. *See id.*; *see also Contreras v. State*, 312 S.W.3d 566, 583–84 (Tex. Crim. App. 2010) ("Essentially, the State must prove (1) an underlying felony, (2) an act clearly dangerous to human life, (3) the death of an individual, (4) causation (the dangerous act causes the death), and (5) a connection between the underlying felony and the dangerous act ('in the course of and in furtherance of . . . or in

10

immediate flight from')."). A person commits the offense of injury to a child if she "intentionally, knowingly, recklessly, or with criminal negligence, by act or intentionally, knowingly, or recklessly by omission, causes to a child . . . (1) serious bodily injury; (2) serious mental deficiency, impairment, or injury; or (3) bodily injury." TEX. PENAL CODE ANN. § 22.04(a) (Vernon 2011).

An indictment for felony murder is not required to allege the constituent elements of the underlying felony. *Tompkins v. State*, 774 S.W.2d 195, 206 (Tex. Crim. App. 1987); *Flores v. State*, 102 S.W.3d 328, 331 (Tex. App.—Eastland 2003, pet. ref'd). With respect to the elements of felony murder, it is generally sufficient for the indictment to allege the elements of the offense without specifying the manner and means used to commit the offense. *Bowen v. State*, 640 S.W.2d 929, 930–31 (Tex. Crim. App. [Panel Op.] 1982). Thus, it is sufficient if the indictment alleges the underlying felony committed and the culpable mental state attending the underlying felony committed. *Johnson v. State*, 4 S.W.3d 254, 255 (Tex. Crim. App. 1999); *Flores*, 102 S.W.3d at 331.

Here, the underlying felony offense is injury to a child, which includes recklessness and criminal negligence as culpable mental states. *See* TEX. PENAL CODE ANN. § 22.04 (Vernon Supp. 2013). The acts or circumstances relied upon to prove the conduct clearly dangerous to human life that caused a death may be the same acts or circumstances relied upon to prove recklessness in the underlying

11

injury of a child offense. *See Contreras*, 312 S.W.3d at 583 (indictment for felony murder based on underlying offense of reckless injury to a child relied on same conduct: "striking [the complainant] about the body with the hand of the defendant").

### 2. *Analysis*

The indictment alleged that appellant committed felony murder in the course of committing the offense of injury to a child by recklessly causing serious bodily injury to Elias Castillo, and it specifically alleged that she committed this crime "by leaving Elias Castillo without adult supervision in a house with a pan containing oil on top of a heated burner that started a fire causing the death of Elias Castillo." Leaving a child less than two years old in a house without supervision, especially when a pan containing oil is left on top of a heated burner, is an inherently reckless act. Thus, the indictment sufficiently pled the acts relied upon to show recklessness. *See* TEX. CODE CRIM. PROC. ANN. art. 21.15; *Smith*, 309 S.W.3d at 16.

Appellant argues that the indictment was required to allege the specific act constituting recklessness with the allegations of the underlying felony in addition to stating that same act in conjunction with the allegation of conduct that was clearly dangerous to human life, causing a death. Appellant cites *Contreras* as an example of proper pleading. In that case, the indictment alleged that the appellant:

did then and there commit the felony offense of Injury to a Child by intentionally, knowingly, recklessly, or by criminal negligence, by act, cause bodily injury to JAZMINE CONTRERAS, a child younger than 15 years of age, by then and there striking JAZMINE CONTRERAS about the body with the hand of the defendant, and while in the course of and in furtherance of the commission of said offense did then and there commit an act clearly dangerous to human life, to wit: by striking JAZMINE CONTRERAS about the body with the hand of the defendant and did thereby cause the death of an individual, namely JAZMINE CONTRERAS.

*Contreras*, 312 S.W.3d at 583. However, *Contreras* did not address the issue of sufficiency of an indictment for purposes of article 21.15. *See id.*

Appellant has pointed to no authority to support her contention that article 21.15 requires that the alleged reckless act be stated twice in order to provide adequate notice of the nature of the accusations against her, nor could we find any. Rather, the inclusion of the specific act—"by leaving Elias Castillo without adult supervision in a house with a pan containing oil on top of a heated burner"— provided appellant with adequate notice of the nature of the accusations against her by asserting an act that was inherently reckless.[3] *See Moff*, 154 S.W.3d at 601 (providing that charging instrument must be specific enough to convey adequate

---

[3] The State argues that article 21.15 does not apply to the underlying felony in a felony murder indictment, and it relies upon *Ramos v. State*, 407 S.W.3d 265 (Tex. Crim. App. 2013), to support this contention. However, *Ramos* merely held that article 21.15 did not apply under the facts of that case, where Ramos was indicted for capital murder and felony murder but was found guilty of manslaughter. *Id.* at 269–70. Specifically, the majority in *Ramos* held that "[s]ection 21.15 does not apply in this situation because the indictment did not include manslaughter, which was a lesser-included offense." *Id.* at 270. We decline to extend the reasoning in *Ramos* to the present case, and the State presents no other authority to support its contention that article 21.15 does not apply here.

notice of nature of accusations so that accused may prepare defense); *see also Smith*, 309 S.W.3d at 16 (alleging inherently reckless act satisfies requirements of article 21.15).

We overrule appellant's fourth issue.

## Motion to Suppress Evidence

In her fifth issue, appellant argues that the trial court erred in denying her motion to suppress the Target bag found inside her home following the fire.

### A.    Facts Relevant to Motion to Suppress

Appellant moved to suppress the the Target bag that fire investigators found in her house after the fire.  At the hearing on the motion to suppress, Thomas Wood, the arson investigator, testified regarding his investigation of the fire.  He stated that he arrived on the scene at approximately 3:00 p.m. while firefighters and emergency medical personnel were still present.  He was assigned the duty of conducting the origin and cause examination, which he testified meant that he had to determine "a physical location where the fire began" and "whatever caused the fire to happen, what things were present and what things came together to result in a fire."  He testified that when he arrived at the house, "[t]he scene was still smoky. The fire had been extinguished, but it was still hot and smoky."

Wood testified regarding the general process of completing an origin and cause investigation.  He stated, "There are several steps involved, but it included

14

my initial assessment, my exterior examination, my interior examination. Once the room of origin was established, a more detailed examination of that area and ultimately establishing the origin of the fire." Wood established that the fire originated in the kitchen and focused the majority of his investigation in that room. He stated that, other than documenting things that were on floor, he and his team did not go through appellant's personal effects that were in the house. Specifically, Wood testified that he and his team collected physical evidence from the kitchen, including the stove and frying pan that had melted and various swabs for testing. Wood also testified that his team collected a Target bag that was in plain view in the front of the house, a tablet just inside the entry door that "appeared to have names of families who had children staying there at the day care," and a board with the day care schedule written out. They also collected clothing and other items, such as some Gatorade bottles, that had been left out in the front yard and driveway.

Wood also testified about general standards used by fire investigators promulgated by the National Fire Protection Association, NFPA 921. Pursuant to the guidelines in NFPA 921, investigators look at damage left by the fire, fire patterns, and witness information to learn about the origin of the fire and the direction it moved. Wood testified that part of his investigation required examining potential human actions that were relevant to the cause of the fire and

15

that it was "always" relevant to determine who, if anyone, was present when a fire started. He testified that he and his team were present on the scene from the time of his arrival until they concluded the on-scene examination shortly after midnight following the fire.

Several months later, Wood returned to the scene to conduct further investigation into the cause and origin of the fire. He "conducted an arc mapping of the structure, trac[ed] the electrical wires and document[ed] any noticeable damage," and completed other aspects of his investigation into the cause of the fire. Wood testified that he entered on to the property at that time pursuant to a voluntary consent form signed by Ronald Velasco, the owner of the property who had terminated appellant's lease after the fire.

Wood was aided in his investigation by Anita Delgadillo and Steven Ross. Delgadillo testified at the suppression hearing regarding her role in the investigation. She testified that while she and Wood completed their external assessment, they found new, unused Gatorade bottles in the driveway. The bottles seemed out of place to her because she noticed that the majority of the damage was at the back of the house near the kitchen and "there was nothing else that would indicate to me that those bottles should be outside." Upon entering the house to do her internal assessment, Delgadillo noticed a Target bag approximately seven feet from the doorway. It also seemed out of place because it looked "new and crisp—

16

it didn't fit with the other items that were scattered, all of the other debris that was scattered there." After she documented the bag's location, she moved it out of the entryway and noticed that the juice container in the bag was full, "wet," and cool to the touch. In addition to the juice, the bag contained an empty plastic Starbucks cup and a receipt. Delgadillo testified that it was a common part of a cause and origin investigation to evaluate things that seemed out of place and to "try to fit them into the overall scheme of what might have happened."

Finally, Leo Gonzales, another arson investigator, testified that investigators sought to determine the origin and cause of the fire and that a determination of who was present at the time of the fire was relevant to that investigation. Gonzales also testified that it was standard protocol to begin with a "360-degree examination of the exterior of the structure" and a preliminary interior examination of the fire scene to determine fire patterns, followed by more extensive investigation of the point of origin. He further stated that when investigators completed their initial investigation on the evening of the fire they determined that the origin of the fire was in the kitchen on the stove, but they did not then determine the exact cause of the fire. Gonzales testified that when he arrived on the scene to investigate the fire, he was aware of some witnesses' reports that, based on appellant's statements to them, they believed oil had been left on the stove. The investigation ultimately determined that burning oil left on the stove caused the fire.

The trial court overruled appellant's motion to suppress the Target bag and its contents.

**B.      Standard of Review**

We review a denial of a motion to suppress evidence for an abuse of discretion. *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008) (citing *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)).  When we review a trial court's denial of a motion to suppress, "[w]e give almost total deference to a trial court's express or implied determinations of historical facts [while] review[ing] de novo the court's application of the law of search and seizure to those facts." *Id.*  We view the evidence in the light most favorable to the trial court's ruling. *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007) (quoting *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006)).  The trial court is the "sole trier of fact and judge of credibility of the witnesses and the weight to be given to their testimony." *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007).  The trial court may choose to believe or disbelieve any part or all of a witness's testimony. *Green v. State*, 934 S.W.2d 92, 98 (Tex. Crim. App. 1996).  We sustain the trial court's ruling if it is reasonably supported by the record and correct on any theory of law applicable to the case. *Laney v. State*, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003).

## C.   Evidence Obtained Pursuant to Fire Investigation

A warrantless entry into a residence is presumptively unreasonable. *Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007). However, a burning building creates an exigency that justifies a warrantless entry by fire officials to fight the blaze. *Michigan v. Clifford*, 464 U.S. 287, 293, 104 S. Ct. 641, 646 (1984). "[O]nce in a building for this purpose, firefighters may seize evidence of arson that is in plain view." *Michigan v. Tyler*, 436 U.S. 499, 509, 98 S. Ct. 1942, 1950 (1978). Furthermore, "officials need no warrant to remain for a reasonable time to investigate the cause of a blaze after it has been extinguished." *Clifford*, 464 U.S. at 293, 104 S. Ct. at 646–47.

The Supreme Court has reasoned that this justification for warrantless entry is based on the public's interest in determining the origins of a fire:

> Fire officials are charged not only with extinguishing fires, but with finding their causes. Prompt determination of the fire's origin may be necessary to prevent its recurrence, as through the detection of continuing dangers such as faulty wiring or a defective furnace. Immediate investigation may also be necessary to preserve evidence from intentional or accidental destruction. And, of course, the sooner the officials complete their duties, the less will be their subsequent interference with the privacy and the recovery efforts of the victims. For these reasons, officials need no warrant to remain in a building for a reasonable time to investigate the cause of a blaze after it has been extinguished. And if the warrantless entry to put out the fire and determine its cause is constitutional, the warrantless seizure of evidence while inspecting the premises for these purposes also is constitutional.

19

*Tyler*, 436 U.S. at 510, 98 S. Ct. at 1950; *see also Clifford*, 464 U.S. at 293 & n.4, 104 S. Ct. at 647 & n.4. (discussing exigencies that justify warrantless post-fire investigation, such as immediate threat that blaze might rekindle or necessity of preserving evidence from intentional or accidental destruction, and concluding that because determining fire's cause and origin serves compelling public interest, warrant requirement does not apply in such cases).

The determination of what constitutes "a reasonable time to investigate" varies according the circumstances of a particular fire. *Tyler*, 436 U.S. at 510 n.6, 98 S. Ct. at 1950 n.6. "[A]ppropriate recognition must be given to the exigencies that confront officials serving under these conditions, as well as to individuals' reasonable expectations of privacy." *Id.* Privacy expectations vary with the type of property, the amount of damage, prior and continued use of the premises, and, in some cases, the owner's efforts to secure it against intruders. *Clifford*, 464 U.S. at 292, 104 S. Ct. at 646; *see also Davis v. State*, 840 S.W.2d 480, 487 (Tex. App.— Tyler 1992, pet. ref'd) (citing *Clifford* in stating, "Regarding fire-damaged premises, however, the warrant requirement applies only if some reasonable privacy interest remains in the fire-damaged property" and concluding that warrantless entry was justified where evidence demonstrated that structure was so badly damaged as to preclude any reasonable expectation of privacy).

Thus, the Supreme Court has held:

The constitutionality of warrantless and nonconsensual entries onto fire-damaged premises . . . turns on several factors: (1) whether there are legitimate privacy interests in the fire-damaged property that are protected by the Fourth Amendment; (2) whether exigent circumstances justify the government intrusion regardless of any reasonable expectations of privacy; and, (3) whether the object of the search is to determine the cause of the fire or to gather evidence of criminal activity.

*Clifford*, 464 U.S. at 292, 104 S. Ct. at 646.

In *Tyler*, the fire chief and his assistants began their investigation of a fire at a furniture warehouse during the early morning hours immediately following the fire, "but visibility was severely hindered by darkness, steam, and smoke," so the investigators left and returned a few hours later to continue their investigation once conditions had improved. 436 U.S. at 511, 98 S. Ct. at 1951. The Supreme Court concluded, "Under these circumstances, we find that the morning entries were no more than an actual continuation of the first, and the lack of a warrant thus did not invalidate the resulting seizure of evidence." *Id.* However, the Supreme Court determined that entries onto the property occurring on subsequent days "were clearly detached from the initial exigency and warrantless entry." *Id.* Thus, the court concluded,

In summation, we hold that an entry to fight a fire requires no warrant, and that once in the building, officials may remain there for a reasonable time to investigate the cause of the blaze. Thereafter, additional entries to investigate the cause of the fire must be made pursuant to the warrant procedures governing administrative searches. Evidence of arson discovered in the course of such investigations is admissible at trial, but if the investigating officials find probable cause

21

> to believe that arson has occurred and require further access to gather evidence for a possible prosecution, they may obtain a warrant only upon a traditional showing of probable cause applicable to searches for evidence of crime.

*Id.* at 511–12, 98 S. Ct. at 1951 (internal citations omitted).

In *Clifford*, one fuel can was discovered in plain view by firefighters who had fought the blaze. 464 U.S. at 290, 104 S. Ct. at 645. After firefighters had extinguished the blaze and left the scene, the Cliffords took steps to secure the residence against further intrusion by sending a work crew to board up the house and pump six inches of water out of the basement. *Id.* After the blaze was extinguished, the water pumping was completed, and the home was secured, investigators conducted two additional, warrantless searches of the Clifford home that uncovered additional fuel cans and other evidence of arson. *Id.* at 290–91, 104 S. Ct. at 645. The Supreme Court balanced the Cliffords' privacy expectations in boarding up their fire-damaged residence, the State's failure to articulate the existence of any exigent circumstances relating the delayed searches of the premises, and the purpose of the searches. *Id.* at 295–97, 104 S. Ct. at 647–49. It determined that the fuel can discovered by firefighters while fighting the fire was admissible, but the evidence seized in subsequent warrantless searches was not admissible. *Id.* at 298–99, 104 S. Ct. at 649–50.[4]

---

[4] See also *Hummel v. State*, No. AP-76596, 2013 WL 6123283, at *14–15 (Tex. Crim. App. Nov. 20, 2013) (not designated for publication) (holding that

22

**D.     Analysis**

Appellant argues that the seizure and search of the Target bag violated her Fourth Amendment rights because it was done without a warrant and because the circumstances of the investigation during which the bag was seized do not implicate the exception to the warrant requirement that arises for fire investigations conducted within a reasonable time after the fire.  Appellant argues that because the bag was not found near the area that suffered the worst of the fire damage, the State should have been required to obtain a warrant before the bag could be seized and searched.  We examine the circumstances of this particular case in light of the factors discussed in *Clifford*.  *See* 464 U.S. at 292, 104 S. Ct. at 646.

First, while appellant had a legitimate expectation of privacy in her home, she also used the home as the basis for operating a state-licensed day care.  *See Minnesota v. Carter*, 525 U.S. 83, 90, 119 S. Ct. 469, 474 (1998) (holding that expectation of privacy in commercial premises is different from, and indeed less than, a similar expectation in individual's home).  Furthermore, appellant had not done anything to secure the property against intruders following the extinguishing of the fire but before the entry by fire investigators, as had the defendants in

---

warrantless entries were justified when firefighters entered house to fight blaze, hazardous conditions persisted when investigators entered to determine cause and origin of fire, investigator believed immediate investigation was necessary to preserve evidence from further destruction, and firefighters continued to extinguish "hot spots" throughout that day and evening).

*Clifford*. *See* 464 U.S. at 292, 104 S. Ct. at 646 (holding that privacy expectations vary with type of property, amount of damage, prior and continued use of premises, and, in some cases, owner's efforts to secure it against intruders). Thus, this case is more like *Tyler*, where the Supreme Court determined that evidence seized from a commercial building in the investigation immediately following the fire was admissible. *See* 436 U.S. at 511, 98 S. Ct. at 1950–51.

Second, the record demonstrates that exigent circumstances justified the fire investigators' entry. *See Clifford*, 464 U.S. at 293, 104 S. Ct. at 646 (stating that burning building creates exigency that justifies warrantless entry by fire officials to fight blaze and stay for "a reasonable time to investigate the cause of a blaze after it has been extinguished"). The fire was reported around 1:30 p.m., and investigators arrived on the scene while firefighters were still present at around 3:00 p.m. Wood testified that it was still hot and smoky in the house when he arrived. Wood, Delgadillo, and Gonzales all testified that it is standard protocol to do a complete external and internal examination of the property after a blaze is extinguished. Almost immediately upon their first entry into the home, arson investigator Delgadillo noticed the Target bag in plain view, approximately seven feet from the front door. Thus, the Target bag and its contents were discovered in the initial investigation immediately following the fire.

Finally, we observe that the object of the search was to determine the cause of the fire, not to gather evidence of criminal activity. All three investigators testified that it was important to determine who might have been present at the time the fire occurred because witness statements were part of their investigation and because human actions that might have contributed to the fire were highly relevant to determining the fire's cause and origin. Delgadillo testified that her job includes observing any items that appear to be out of place or unusual for any reason and trying to determine how they might fit in to the entire picture. Gonzales testified that although investigators were aware from witnesses' statements and the appearance of the exterior of the home that the fire was concentrated in the kitchen area, the investigators were not able to establish the cause of the fire following their first investigation. The record demonstrates that subsequent re-entries to the property that occurred after the day of the fire were made pursuant to a warrant or with the permission of the property owner.

Appellant essentially argues that the initial fire investigation should have been limited only to the kitchen area, because she asserts that the degree of fire damage made it obvious that the fire originated in that area. However, this limited interpretation of fire officials' obligation to conduct an immediate investigation of a fire does not comport with Supreme Court precedent in this area, nor does it serve the compelling public interest in determining a fire's cause and origin,

25

especially where such a fire has occurred in a state-licensed daycare facility. *See Clifford*, 464 U.S. at 292, 104 S. Ct. at 646; *Tyler*, 436 U.S. at 510–11 & n.6, 98 S. Ct. at 1950 & n.6.

Considering all the circumstances of this particular case and the factors presented by the Supreme Court in *Clifford*, we conclude that the trial court did not abuse its discretion in overruling appellant's motion to suppress the Target bag and its contents. Any legitimate privacy interest that appellant had in the property was overwhelmed by the exigent circumstances arising in the immediate aftermath of the fire and the need of investigators to determine the cause and origin of the fire. *Clifford*, 464 U.S. at 292, 104 S. Ct. at 646.

We overrule appellant's fifth issue.

## Conclusion

We affirm the judgment of the trial court.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Sharp, and Huddle.

Publish.   TEX. R. APP. P. 47.2(b).