

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-25-00036-CR

———————————————

SHANAY ANNETTE FRANKLIN, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 371st District Court
Tarrant County, Texas
Trial Court No. 1832660

Before Sudderth, C.J.; Kerr and Birdwell, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

Appellant Shanay Annette Franklin was babysitting her distant relative's one-year-old toddler, J.C. (Jane),[1] when the toddler suffered a head injury and died. The question at trial was how the injury occurred—whether it was accidental or the result of blunt force trauma. The jury concluded the latter, finding Franklin guilty of both (1) felony murder by committing an act clearly dangerous to human life that both killed the child and feloniously injured the child; and (2) recklessly causing serious bodily injury to the child.

Franklin argues that (1) there was insufficient evidence of either offense because the State relied on expert testimony that, according to Franklin, was medically and legally invalid; (2) the felony murder conviction improperly relied on a single act to prove both the act clearly dangerous to human life and the underlying felony of injury to a child; and (3) the jury charge on felony murder was missing necessary language in its application paragraph. But Franklin's first point overreads the Court of Criminal Appeals' precedent; her second point contradicts the Court of Criminal Appeals' precedent; and to the extent that her third point identifies error, she indirectly concedes that it was harmless. We will affirm.

---

[1]We use a pseudonym to protect the child's privacy. *See* Tex. R. App. P. 9.10(a)(3); *Cisnerosmartinez v. State*, No. 02-24-00144-CR, 2025 WL 1840568, at *1 n.2 (Tex. App.—Fort Worth July 3, 2025, pet. ref'd) (mem. op., not designated for publication).

## I. Background

Jane's tragic injury occurred while Franklin was babysitting her in early 2021. Franklin took Jane with her to run errands, and during that time, surveillance footage showed Jane exhibiting no signs of injury. But in the 20 minutes between Franklin's last errand and her call to 911, something happened.

According to Franklin, when she arrived home, she temporarily placed Jane in the front seat of the vehicle as she was unloading, and Jane fell from the car—a Toyota sedan—and hit the back of her head on the uneven concrete of the driveway. Franklin later told the police that Jane had initially appeared to be fine, even running around the yard after hitting her head. But within a few minutes, Jane began to breathe irregularly and grew nonresponsive. Franklin called an ambulance, and by the time the first responders arrived, Jane was "in a daze."

At the hospital, Jane's condition grew worse. Although she had no external injuries, her CT scans showed significant cerebral swelling and bleeding.[2]

Three doctors—Jane's neurosurgeon, her medical examiner, and a neuroradiologist—described Jane's injuries for the jury. They testified that Jane had bilateral subdural hematomas, significant brain swelling, retinal hemorrhages, and retinal detachment. All three doctors opined that, typically, injuries like Jane's were

---

[2]When a second CT scan was taken a few hours later, the swelling and bleeding had grown worse, which a neuroradiologist later explained was an indication that Jane's injury had been recent.

caused by "high force" or "big energy" events that involved acceleration and rapid deceleration, such as motor vehicle accidents, falls from high multi-story buildings, or being slammed into a surface. Although the doctors noted that subdural hematomas could result from other conditions as well (e.g., severe infections) and that they were more common in certain populations (e.g., the elderly), the doctors opined that, based on their experience, Jane's injuries were inconsistent with a mere fall from the seat of a stationary passenger vehicle.[3] They highlighted the retinal detachment as a particularly noteworthy injury, describing it as "incredibly rare" and "unusual"; explaining that it required significant force to inflict; and testifying that it was uncommon to see such an injury even after a vehicle accident.

Within two days, Jane died. The medical examiner concluded that Jane's cause of death was blunt force trauma to the head.

The State relied on the three doctors' expert testimony for its theory of the case. It reasoned that—although it did not know what Franklin had done to cause Jane's blunt force trauma—because Franklin had been the only adult present at the time of Jane's fatal head injury, because the medical evidence showed a high-force acceleration–deceleration injury, and because Franklin's description of the cause was

---

[3]The three doctors further testified that, in their experience, a child with Jane's injuries would "immediate[ly]" become symptomatic.

4

implausible, Franklin must have "snapped and lost control" while babysitting.[4]

Franklin, meanwhile, insisted that the injury had occurred just as she said—as the result of an accidental fall from the car—and that, regardless of the expert testimony, it was "ridiculous" and contrary to common sense to "believe that this little baby that fell out of a car backwards and hit concrete did not hurt itself."[5]

Ultimately, the jury was asked to determine whether Franklin committed, among other things,[6] felony murder and reckless injury to a child. Specifically, the jury charge asked whether Franklin had (1) "commit[ted] an act clearly dangerous to

---

[4]In her closing argument, Franklin equated the State's theory of "snap[ping]" with "shaken baby syndrome." A police detective had referenced shaken baby syndrome during his audio-recorded interview of Franklin, and initial versions of Franklin's indictment had alleged that she had committed her crimes by, among other things, shaking Jane. However, Franklin's indictment was ultimately amended to remove the allegation of shaking, and none of the State's medical experts referenced shaken baby syndrome. To the contrary, when Franklin asked the medical examiner if he had heard of shaken baby syndrome and if he was aware that, "medically, they don't consider that a valid medical assessment anymore," the medical examiner confirmed as much, stating that he "ha[d] never used the term as a diagnosis [him]self."

[5]Franklin presented evidence of other potential causes of Jane's injuries as well. For example, she elicited testimony that Jane hit her head on the floor during temper tantrums and that Jane's mother had accidentally hit her in the head with a door a month before her death.

[6]The two quoted offenses are the only ones that the jury found had been committed, so they are the only offenses relevant to this appeal. However, regarding the second count—injury to a child—the quoted offense of conviction was a lesser-included offense of that charged in the indictment. Franklin was indicted for "intentionally or knowingly" causing serious bodily injury to Jane, but the jury found her not guilty of that crime, so it turned to the question of whether Franklin had acted "recklessly."

human life, namely, causing the acceleration and deceleration of [Jane] with·[Franklin's] hand or by striking [Jane] with or against a hard or soft object or surface, which caused the death of [Jane]," in the course of and in furtherance of the commission or attempted commission of a felony, "namely, intentionally, knowingly, recklessly, or with criminal negligence [committing] injury to a child"; and (2) "recklessly cause[d] serious bodily injury to [Jane] . . . by causing the acceleration and deceleration of [Jane] with the Defendant's hand or by striking [Jane] with or against a hard or soft object or surface." *See* Tex. Penal Code Ann. §§ 19.02(b)(3), 22.04(a)(1). The jury found Franklin guilty of both offenses.[7] After hearing punishment evidence, it assessed her punishment at 23 and 20 years' confinement, respectively. *See id.* §§ 12.32 (providing punishment range for first-degree felonies), 12.33 (providing punishment range for second-degree felonies), 19.02(b)(c) (classifying felony murder as first-degree felony), 22.04(e) (classifying reckless serious injury to a child as second-degree felony). The trial court entered judgments in accordance with the verdicts.

## II. Discussion

On appeal, Franklin argues that (1) there was insufficient evidence of her offenses because the State's medical expert testimony constituted no evidence as a matter of law; (2) the evidence of and jury charge on felony murder were flawed

---

[7]The jury was also asked if Franklin had used or exhibited a deadly weapon during the commission of the offenses, but it did not find that she had.

6

because they relied on her fatal, clearly dangerous act to prove the underlying felony of injury to a child; and (3) the jury charge on felony murder erroneously and harmfully omitted two things from its application paragraph, namely, the elements of the underlying felony and the requirement that her clearly dangerous act be "in furtherance of" her underlying felony.[8]

## A. Sufficiency Challenge: The expert testimony had evidentiary value, so the evidence was sufficient.

First, Franklin complains that the evidence was insufficient to support the causation component of her convictions. She does not present a traditional sufficiency complaint, though; rather, she raises a purely legal argument that the State's expert medical testimony amounted to no evidence.

Franklin contends that the State's expert medical testimony—attributing Jane's injury to a "high-energy" acceleration–deceleration event and ruling out a short-distance fall as a likely cause—"rested upon medical opinions that have been disavowed by the scientific and medical communities and the Court of Criminal

---

[8]Franklin structures her issues as five: (1) whether the evidence was sufficient to prove her offenses given the State's reliance on invalid expert testimony; (2) whether the jury charge was egregiously harmful by failing to require that her clearly dangerous act be "in furtherance of" the underlying felony; (3) whether the jury charge was egregiously harmful by failing to include the elements of the underlying offense; (4) whether the evidence was sufficient to prove felony murder when there was no evidence of a clearly dangerous act separate from the act constituting the underlying felony; and (5) whether the jury charge was defective by authorizing a felony murder conviction based on a single act that served as both the clearly dangerous act and the act constituting the underlying felony. For organizational purposes, we reorder her issues and construe them as three.

Appeals" in *Henderson* and *Roark*. [Emphasis altered.] *See generally Ex parte Roark*, 707 S.W.3d 157, 159–88 (Tex. Crim. App. 2024); *Ex parte Henderson*, 384 S.W.3d 833, 833–34 (Tex. Crim. App. 2012). Thus, she reasons, the State's expert testimony amounted to no evidence, and without it, there was insufficient evidence overall to support her convictions. Franklin's argument fails for two reasons.

First, to support her assertion that the experts' "medical opinions . . . have been disavowed by the scientific and medical communities," she relies on information outside the record—medical journals and testimony from experts in other cases that she claims calls the medical accuracy of the State's expert testimony into question. But "[i]n a direct appeal, our review is bound by the appellate record," i.e., "the clerk's record and reporter's record." *Matthews v. State*, No. 05-24-01304-CR, 2025 WL 3461933, at *5 (Tex. App.—Dallas Dec. 2, 2025, no pet. h.) (mem. op., not designated for publication) (rejecting similar sufficiency challenge to injury to a child conviction). Franklin was free to object to the admission of the State's medical expert testimony at trial,[9] she was free to offer evidence calling the experts' testimony into question, and she was free to cross-examine the experts on the alleged flaws in their opinions. To the extent that she failed to do so, she cannot now supplement the record with evidence that she wishes she had offered.

---

[9]Franklin did not object to the admission of the State's medical expert testimony, nor does she argue on appeal that the testimony should have been excluded.

Second, and for similar reasons, Franklin's reliance on *Roark* and *Henderson* is misplaced. Not only were *Roark* and *Henderson* habeas cases—in which the defendants sought a different remedy on a different basis with a different standard of review[10]—but the appellate record in those cases materially differed from the record here.

There, based on medical expert testimony regarding the causes of the children's severe head injuries, the defendants were convicted of injuring or murdering children. *See Roark*, 707 S.W.3d at 159–60; *Henderson*, 384 S.W.3d at 833–34. But after the defendants' convictions, the medical consensus on pediatric head trauma shifted, leading some of the State's medical experts to recant or re-evaluate their trial testimony. *See Roark*, 707 S.W.3d at 174–88 (describing habeas evidence showing postconviction shift in medical consensus regarding short-distance falls and shaken baby syndrome and noting expert's averment that "she would no longer testify that rebleeds are controversial[ or] rare"); *Henderson*, 384 S.W.3d at 833–34 (noting medical examiner's reversal and habeas testimony that "there [wa]s no way to determine . . . whether [the] injuries resulted from an intentional act of abuse or an accidental fall"). The defendants sought habeas relief, and—crucially—presented

---

[10]In *Roark* and *Henderson*, the habeas courts applied a preponderance of the evidence standard or a clear and convincing evidence standard—not a sufficiency standard—to determine whether the defendants were entitled to new trials—not acquittals. *See Roark*, 707 S.W.3d at 183–84; *Henderson*, 384 S.W.3d at 833–34; *see also* Tex. Code Crim. Proc. Ann. arts. 11.071, § 5(a), 11.073(b)(2).

evidence of the postconviction recantations and shifts in the medical field. *Roark*, 707 S.W.3d at 174–84; *Henderson*, 384 S.W.3d at 833–34. It was in this context that the Court of Criminal Appeals reviewed the records before it and agreed with the habeas courts that, based in part on the "new scientific evidence," the defendants were entitled to new trials. *Roark*, 707 S.W.3d at 183–88 (concluding that, if the defendant received a new trial, "there would be a marked shift in the [medical expert] testimony," and if the experts' testimony did not change, they "would be confronted with . . . . reputable scientific studies and publications that . . . point[ed] away from their stated positions"); *Henderson*, 384 S.W.3d at 834 (accepting habeas court's relevant findings in support of new trial and noting that, "[a]s a matter of course," the appellate court will defer to the habeas court "in matters concerning the weight and credibility of the witnesses and, in the case of expert witnesses, the level and scope of their expertise"); *see Morales-Gomez v. State*, No. 14-24-00543-CR, 2025 WL 3672142, at *1–5 (Tex. App.—Houston [14th Dist.] Dec. 18, 2025, no pet. h.) (distinguishing *Roark* factually and procedurally; concluding that, "contrary to [the defendant's] argument, *Roark* was not a wholesale repudiation of even shaken baby syndrome, but rather a context[-]dependent reexamination of certain scientific opinions concerning the cause of a child's injury and their likely affect on the jury's verdict"; and holding evidence sufficient to support felony murder conviction).

Here, there is no record of postjudgment recantations or shifts in the medical consensus. To the contrary, the outside-the-record sources that Franklin cites—

10

including the expert medical testimony offered in *Roark* and *Henderson*—all predated her 2025 trial. *See Matthews*, 2025 WL 3461933, at *5 (reviewing direct appeal in which defendant attempted to refute expert testimony with evidence offered in *Roark* and noting that defendant's trial occurred years after the habeas evidence discussed in *Roark*); *see also Roark*, 707 S.W.3d at 157 (reflecting opinion date of October 9, 2024); *Henderson*, 384 S.W.3d at 833 (reflecting opinion date of December 5, 2012). Again, she was free to offer such information as evidence at her trial.[11] But she has not cited any case law or other legal authority holding that expert medical testimony can be stripped of its evidentiary value in a direct appeal based on outside-the-record sources that purport to contradict the testimony's medical accuracy. *See Matthews*, 2025 WL 3461933, at *4–5 (rejecting similar attempt to rely on *Roark* for sufficiency challenge to injury to a child conviction, distinguishing *Roark* as "rooted in the testimony presented during the writ hearings that demonstrated a change in medical science," and noting that no such testimony had been presented at the defendant's trial so it was beyond the scope of review on direct appeal).

When it comes to the appellate record before us, Franklin does not identify anything in the record that undermined the State's expert testimony as a matter of law.

---

[11]Franklin presented contradicting medical evidence with regard to a different medical theory of causation: shaken baby syndrome. Although none of the State's experts used the phrase, Franklin elicited testimony from the medical examiner to confirm that, "medically, they don't consider that [i.e., shaken baby syndrome] a valid medical assessment anymore." *See supra* note 4.

And she does not dispute that, when such expert testimony is considered, there was sufficient evidence to support her convictions. *Cf. Walker v. State*, No. 02-23-00196-CR, 2024 WL 3364823, at *7–8 (Tex. App.—Fort Worth July 11, 2024, no pet.) (mem. op., not designated for publication) (holding evidence sufficient to support manslaughter and injury to a child convictions "[g]iven the extent of [the child's] injuries" shown by the medical evidence at trial "and the fact that [the defendant] was the only person alone with [the child] before his injuries began manifesting").

We overrule her first issue.

## B.  Act-Related Challenges:  The State could rely on a single act.

Franklin next argues that her conviction for felony murder was based on insufficient evidence of an act clearly dangerous to human life and that the corresponding jury charge was erroneous.  But once again, she relies on a theory of legal invalidity rather than raising a traditional sufficiency or jury charge complaint.

Franklin argues that the State's theory of felony murder was at odds with the plain language of the Penal Code because the State relied on a single act to prove both the act clearly dangerous to human life and the act constituting the underlying felony—two separate elements of the felony murder offense.  *See* Tex. Penal Code Ann. § 19.02(b)(3) (criminalizing felony murder when a person "commits or attempts to commit a felony . . . and in the course of and in furtherance of the commission or attempt, or in immediate flight [there]from . . . , the person commits or attempts to commit an act clearly dangerous to human life that causes the death"); *Fraser v. State*,

726 S.W.3d 253, 259 (Tex. Crim. App. 2025) (listing five elements of felony murder, two of which are (1) an underlying felony, and (2) an act clearly dangerous to human life); *Contreras v. State*, 312 S.W.3d 566, 583–84 (Tex. Crim. App. 2010) (same).

But Franklin candidly admits that the Court of Criminal Appeals rejected her proposed interpretation of the statute in *Johnson v. State*. 4 S.W.3d 254, 254–58 (Tex. Crim. App. 1999). There, the defendant asserted that "the acts allegedly forming the offense of injury to a child were the same acts relied upon by the State to prove [his] commission of 'an act clearly dangerous to human life'" and "thus could not support [his] conviction for felony murder." *Id.* at 254–55. In other words, the defendant's complaint was nearly identical to the one that Franklin raises here. *See id.* Yet the Court of Criminal Appeals rejected it, affirmed Johnson's conviction, and "disavow[ed]" its prior statement "that in order to support a conviction under the felony murder provision, '[t]here must be a showing of felonious criminal conduct other than the assault causing the homicide.'" *Id.* at 258; *see Fraser*, 726 S.W.3d at 259 (reiterating that "[f]elony injury to a child qualifies as an underlying felony in a felony murder prosecution"); *Rodriguez v. State*, 454 S.W.3d 503, 506–07 (Tex. Crim. App. 2014) (similar); *Contreras*, 312 S.W.3d at 584 (similar).

Nonetheless, Franklin urges us to depart from *Johnson*. She asserts that the case was wrongly decided and that the Court of Criminal Appeals (or at least one member of the Court) has "signaled an interest in revisiting this issue." *See Fraser*, 726 S.W.3d at 274–77 (Finley, J., concurring) (opining that the court "should, at the earliest

13

opportunity, reexamine [its] felony murder jurisprudence"). But that is the Court of Criminal Appeals' prerogative—not ours. *See Polasek v. State*, No. 14-22-00302-CR, 2023 WL 7034087, at *1–2 (Tex. App.—Houston [14th Dist.] Oct. 26, 2023, pet. ref'd) (mem. op., not designated for publication) (rejecting similar argument in review of felony murder conviction). We are not at liberty to disregard or "revisit[]" binding precedent from a higher court. *See State ex rel. Wilson v. Briggs*, 351 S.W.2d 892, 894 (Tex. Crim. App. 1961) (orig. proceeding) ("The Court of Criminal Appeals is the court of last resort in this state in criminal matters[;] . . . no other court of this state has authority to overrule or circumvent its decisions[] or [to] disobey its mandates."); *Polasek*, 2023 WL 7034087, at *2 (rejecting similar request to depart from *Johnson* and noting that "under stare decisis, we are bound to follow the precedent established by the [C]ourt of [C]riminal [A]ppeals majority").

Because *Johnson* is binding, we overrule Franklin's act-related challenges.

## C. Jury Charge Challenges: The two challenged omissions were, respectively, not erroneous and not egregiously harmful.

Finally, Franklin challenges two alleged errors in the felony murder jury charge. She argues that, although she did not object to the charge, the application paragraph erroneously omitted (1) the elements of the underlying offense of injury to a child and

14

(2) the requirement that her clearly dangerous act be committed "in furtherance of" the underlying felony.[12]

But for Franklin to obtain reversal based on these unpreserved allegations of charge error,[13] (1) the charge must have, in fact, been erroneous; and (2) the error must have actually, egregiously harmed Franklin so as to deprive her of a "fair and impartial trial." *Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016); *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g). Here, the two challenged omissions were, respectively, (1) not erroneous and (2) not harmful.

### 1. No Error: Failing to reiterate the underlying offense's elements in the application paragraph was not error.

First, Franklin argues that the jury charge was erroneous because, in the application paragraph for felony murder, the charge did not list the elements of the underlying felony of injury to a child. But this omission was not error.

The elements of felony murder are "(1) an underlying felony, (2) an act clearly dangerous to human life, (3) the death of an individual, (4) causation (the dangerous act causes the death), and (5) a connection between the underlying felony and the dangerous act ("in the course of and in furtherance of . . . or in immediate flight

---

[12]In contrast to Franklin's prior appellate issues, these complaints are not repackaged questions of legal validity; they are traditional jury charge complaints.

[13]Franklin concedes that she did not object to the alleged errors.

from')." *Fraser*, 726 S.W.3d at 259; *Contreras*, 312 S.W.3d at 583–84; *Williamson v. State*, No. 03-17-00787-CR, 2019 WL 4849605, at \*5 (Tex. App.—Austin Oct. 2, 2019, pet. ref'd) (mem. op., not designated for publication). The specific underlying felony "constitute[s] the manner or means that make up the 'felony' element" of the offense. *White v. State*, 208 S.W.3d 467, 469 (Tex. Crim. App. 2006) (holding that, "when an indictment alleges multiple felonies" underlying felony murder, "these specifically named felonies are not elements about which a jury must be unanimous" but instead "constitute the manner or means that make up the 'felony' element"); *see Contreras*, 312 S.W.3d at 584–85 (reiterating that "the felony murder statute simply require[s] jury agreement that a 'felony' was committed; 'specifically named felonies' [a]re 'not elements about which a jury must be unanimous'"); *Tata v. State*, 446 S.W.3d 456, 463 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) ("An indictment for felony murder is not required to allege the constituent elements of the underlying felony.").

In this way, the offense's elemental structure is "closely analogous" to that of capital murder, which also requires, in relevant part, a murderous act committed "in the course of committing or attempting to commit" an underlying, enumerated felony. Tex. Penal Code Ann. § 19.03(a)(2); *Contreras*, 312 S.W.3d at 584–85 (reviewing felony murder conviction and referencing case law "in the closely analogous capital murder context"). And "the Court of Criminal Appeals has consistently held that[,] for a capital murder committed 'in the course of' committing an underlying aggravating offense, the elements of the aggravating offense 'need not

16

be set out in that portion of the charge applying the law to the facts'" so long as those elements are set forth elsewhere in the charge. *Williamson*, 2019 WL 4849605, at *6 (reviewing felony murder charge and holding that application paragraph's omission of underlying felony's elements was not erroneous); *see Demouchette v. State*, 731 S.W.2d 75, 80 (Tex. Crim. App. 1986) (reiterating in capital murder case that "the elements of the aggravating offense need not be set out in that portion of the charge applying the law to the facts"); *Granviel v. State*, 723 S.W.2d 141, 157 (Tex. Crim. App. 1986) (similar); *cf. Cisnerosmartinez*, 2025 WL 1840568, at *8 (holding in continuous sexual abuse context that application paragraph's omission of predicate offenses' mens rea elements was not error when mens rea elements were stated in abstract portion of charge); *Williams v. State*, No. 02-20-00104-CR, 2021 WL 5227167, at *3–4 (Tex. App.—Fort Worth Nov. 10, 2021, no pet.) (mem. op., not designated for publication) (similar); *Whitington v. State*, No. 08-13-00102-CR, 2015 WL 3653326, at *8–9 (Tex. App.—El Paso Apr. 24, 2015, pet. ref'd) (not designated for publication) (similar).

Here, the elements of the underlying offense were set forth in the abstract portion of Franklin's jury charge. The trial court's failure to repeat them in the application paragraph was not error. *See Williamson*, 2019 WL 4849605, at *5–8 (holding similarly when defendant argued that trial court erred by omitting mens rea element of underlying felony from felony murder charge's application paragraph). We overrule this portion of Franklin's issue.

**2. No Egregious Harm: Omitting the phrase "in furtherance of" from the application paragraph was not egregiously harmful.**

Second, and finally, Franklin argues that the felony murder jury charge was erroneous because the application paragraph did not restate that her clearly dangerous act was required to be "in furtherance of" her underlying felony. This omission does not warrant reversal, though, because, assuming it was erroneous, it did not egregiously harm Franklin.

To assess whether a charge error egregiously harmed the defendant, we consider the entire jury charge; the state of the evidence, including the contested issues; the arguments of counsel; and any other relevant information in the record. *Marshall*, 479 S.W.3d at 843; *Almanza*, 686 S.W.2d at 171. In Franklin's case, the charge as a whole not only clarified the elements of felony murder but also—together with the evidence and arguments of counsel—confirmed that the "in furtherance of" requirement was a non-issue.

The first page of the jury charge informed the jury that "a person commits the offense of [felony] murder" only if her fatal, clearly dangerous act is committed "in the course of and in furtherance of" the commission or attempted commission of the underlying felony. The charge thus informed the jury of the required connection between the clearly dangerous act and the underlying felony. *See Contreras*, 312 S.W.3d at 584 (characterizing "in furtherance of" language as part of the felony murder element that requires "a connection between the underlying felony and the dangerous

18

act"); *Ramirez v. State*, No. 14-02-00321-CR, 2003 WL 548600, at *1–2 (Tex. App.—Houston [14th Dist.] Feb. 27, 2003, pet. ref'd) (mem. op., not designated for publication) (holding no egregious harm when "in furtherance of" language was omitted from conspiracy-based application paragraph but language appeared in abstract portion of charge). And although the "in furtherance of" language was not repeated in the charge's application paragraph, that paragraph left no question about the factual connection between the clearly dangerous act and the underlying offense.

The application paragraph authorized the jury to convict Franklin only if it found that Franklin had "commit[ted] an act clearly dangerous to human life, namely, causing the acceleration and deceleration of [Jane] . . . which caused the death of [Jane], and [Franklin] was in the course of . . . [committing] injury to a child." In other words, the application paragraph relied on a finding that Franklin's clearly dangerous act was the same act that feloniously injured—and killed—Jane.

Franklin not only admits this equivalence but emphasizes it in other parts of her brief. Indeed, as already discussed, *see supra* Section II.B, she raises appellate complaints on that basis. And in doing so, she indirectly concedes that the jury charge, evidence, and arguments of counsel—the key considerations in assessing egregious harm, *see Almanza*, 686 S.W.2d at 171—all demonstrated that the "in furtherance of" language was a non-issue, even expressly addressing each of these considerations:

> The record demonstrates the act constituting the predicate felony and the act clearly dangerous were one and the same[:] the head injury to [Jane]. The jury charge instructed conviction on this single act. The charging paragraph required commission of acts clearly dangerous to human life that caused death in the course of committing injury to a child encompassing one injury. . . . From the beginning to the end of trial, the prosecutors repeatedly and consistently argued conviction based on one act. From voir dire to opening and closing they argued the single act as proof of guilt. Thus, the felony murder verdict was predicated on a single act.[14] [Internal citations omitted.]

We agree. The parties did not dispute whether Franklin's clearly dangerous act was in furtherance of her felonious injury of Jane; they disputed whether Franklin committed a dangerous, injurious act at all.

Because Franklin's clearly dangerous act was also the basis for her underlying felony, the application paragraph's failure to repeat the "in furtherance of" phrase was not harmful, much less egregiously so. *Cf. Marshall*, 479 S.W.3d at 843–45 (holding no egregious harm from application paragraph's omission of "bodily injury" element when paragraph alleged impeding breath by blocking victim's nose or mouth and explaining that, "[b]y finding that [the defendant] impeded [the complainant's] breathing, the jury found bodily injury per se"). We overrule this second portion of Franklin's final issue.

---

[14]Franklin also asserts, in urging this court to revisit *Johnson*, that the State's reliance on a single act rendered the "in furtherance of" requirement "meaningless." While we do not endorse this descriptor, it again evinces Franklin's recognition that, in the circumstances of this case, the omission of the "in furtherance of" requirement from the application paragraph was harmless.

20

### III. Conclusion

Having overruled all of Franklin's issues, we affirm the judgments of conviction.  Tex. R. App. P. 43.2(a).

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  February 26, 2026