# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00303-CV

**HWY 3 MHP, LLC, Appellant**

**v.**

**Electric Reliability Council of Texas (ERCOT), Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 419TH JUDICIAL DISTRICT NO. D-1-GN-09-003607, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING

## O P I N I O N

Until 2008, HWY 3 MHP, LLC ("HWY 3"), was a registered retail-electric-service provider that bought electricity at wholesale prices and sold it to its customers who prepaid for service. To satisfy the needs of its customers, HWY 3 entered into a standard-form-market-participant agreement with the Electric Reliability Council of Texas (ERCOT). *See FPL Energy, LLC v. TXU Portfolio Mgmt. Co., L.P.*, 426 S.W.3d 59, 61 (Tex. 2014) (providing that with few exceptions, ERCOT "manages the transmission of electricity through an interconnected network—or grid—of transmission lines"). That agreement set out the relationship between HWY 3 and ERCOT, including what constitutes a default under the agreement as well as remedies for defaults, and required HWY 3 to comply with certain financial obligations and with ERCOT's Protocols. *See Public Util. Comm'n v. Constellation Energy Commodities Grp., Inc.*, 351 S.W.3d 588, 594-95 (Tex. App.—Austin 2011, pet. denied) (explaining that protocols adopted by ERCOT "are rules that provide the framework

for the administration of the Texas electricity market"); *BP Chems., Inc. v. AEP Tex. Cent. Co.*, 198 S.W.3d 449, 452 (Tex. App.—Corpus Christi 2006, no pet.) (providing that utilities are obligated "to abide by the procedures established by ERCOT").

In May 2008, ERCOT determined that HWY 3 needed to post an additional deposit of nearly one million dollars to continue its operations. The issues of whether ERCOT timely informed HWY 3 of this new obligation and whether ERCOT provided HWY 3 with the time needed to comply are contested by the parties; however, what is not in dispute is that after concluding that HWY 3 had breached the agreement by failing to pay the additional deposit, ERCOT transferred all of HWY 3's customers to other providers and later filed a breach-of-contract claim against HWY 3. *See* 16 Tex. Admin. Code § 25.361 (2014) (Public Util. Comm'n of Tex., Electric Reliability Council of Tex. (ERCOT)) (delegating certain powers to ERCOT).

Approximately two years after ERCOT filed its suit, HWY 3 filed a counterclaim contending that ERCOT had breached the agreement. In response, ERCOT filed a plea to the jurisdiction asserting that the Public Utility Commission (the "Commission") has exclusive jurisdiction over the claims presented by HWY 3 and that HWY 3 failed to exhaust its administrative remedies. Accordingly, ERCOT asked the district court to dismiss HWY 3's counterclaim. Once ERCOT filed its plea, HWY 3 filed a response arguing that the Commission does not have exclusive jurisdiction over its counterclaim and requesting that the district court deny the plea.

After considering the various arguments and filings, the district court issued an order granting ERCOT's plea and dismissing with prejudice HWY 3's counterclaim "in [its] entirety." Shortly after receiving the district court's ruling, HWY 3 filed this interlocutory appeal. *See* Tex.

2

Civ. Prac. & Rem. Code § 51.014(a)(8) (authorizing certain interlocutory appeals); Tex. R. App. P. 26.1(b) (setting out time to file accelerated appeal), 28.1(a) (listing types of accelerated appeals). We will dismiss this appeal for lack of jurisdiction.

**DISCUSSION**

In its appeal, HWY 3 contends that the district court erred by granting ERCOT's plea because the Commission does not have exclusive jurisdiction over the counterclaim. In another set of arguments, HWY 3 urges that even if the Commission has exclusive jurisdiction over portions of the counterclaim, it does not have "exclusive jurisdiction over contractual disputes seeking damages." On the other hand, ERCOT insists that the district court properly granted the plea to the jurisdiction. Alternatively, ERCOT argues that this Court does not have jurisdiction over this appeal because the district court's ruling was not an appealable order. Because this last argument concerns our jurisdiction to consider this appeal at all, we consider that argument first.

"Subject matter jurisdiction presents a question of law" that appellate courts "review de novo." *City of Houston v. Rhule*, 417 S.W.3d 440, 442 (Tex. 2013). Moreover, the jurisdictional question at issue in this appeal presents a matter of statutory construction, which appellate courts also perform de novo. *See City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008). When performing this task, our primary objective is to give effect to the legislature's intent. *Iliff v. Iliff*, 339 S.W.3d 74, 79 (Tex. 2011). To ascertain that intent, we rely on the plain meaning of the words in the statute "unless a different meaning is supplied by legislative definition or is apparent from the context, or the plain meaning leads to absurd results," *Texas Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010), and we look to the entire act and not just to

3

"isolated portions," *20801, Inc. v. Parker*, 249 S.W.3d 392, 396 (Tex. 2008). If "a statute's words are unambiguous and yield but one interpretation," we give "such statutes their plain meaning without resort to rules of construction or extrinsic aids." *Combs v. Roark Amusement & Vending, L.P.*, 422 S.W.3d 632, 635 (Tex. 2013). Further, we presume that "the Legislature selected language in a statute with care and that every word or phrase was used with a purpose in mind," *First State Bank*, 325 S.W.3d at 635, and we endeavor not to interpret a statute "in a manner that renders any part of the statute meaningless or superfluous," *Columbia Med. Ctr. of Los Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 256 (Tex. 2008).

In general, "only final judgments are appealable," but the Civil Practice and Remedies Code does contain a narrow exception to this rule. *LTTS Charter Sch., Inc. v. C2 Constr., Inc.*, 342 S.W.3d 73, 76 (Tex. 2011); *see* Tex. Civ. Prac. & Rem. Code § 51.014 (listing certain interlocutory orders from trial courts that may be appealed); *see also Total Fitness Corp. v. Jackson*, 53 S.W.3d 352, 352 (Tex. 2001) (explaining that "party may not appeal an interlocutory order unless authorized by statute"). The provision of the Code at issue in this case allows a party to appeal the interlocutory order of a trial court that "grants or denies a plea to the jurisdiction by a governmental unit." Tex. Civ. Prac. & Rem. Code § 51.014(a)(8). Moreover, the Code defines the term "governmental unit" and clarifies that the term includes, in relevant part, the following:

> (D) any other institution, agency, or organ of government the status and authority of which are derived from the Constitution of Texas or from laws passed by the legislature under the constitution.

4

*Id.* § 101.001(3)(D).[1]

As HWY 3 explains, the supreme court was recently confronted with determining whether an entity qualified as a governmental unit under subsection 101.001(3)(D) and, in turn, under subsection 51.014(a)(8). *See LTTS Charter Sch.*, 342 S.W.3d 73. In particular, the court determined that an "open-enrollment charter school qualifies . . . as an 'institution, agency, or organ of government' deriving its status and authority from legislative enactments." *Id.* at 75 (quoting Tex. Civ. Prac. & Rem. Code § 101.001(3)(D)). Accordingly, the court decided that the school was entitled to pursue an interlocutory appeal of the denial of its plea to the jurisdiction. *Id.*; *see* Tex. Civ. Prac. & Rem. Code § 51.014(a)(8).

---

[1] The Civil Practice and Remedies Code contains three other components to the definition of "governmental unit." Tex. Civ. Prac. & Rem. Code § 101.001(3)(A)-(C). In particular, the Code includes within the definition the following:

> (A) this state and all the several agencies of government that collectively constitute the government of this state, including other agencies bearing different designations, and all departments, bureaus, boards, commissions, offices, agencies, councils, and courts;

> (B) a political subdivision of this state, including any city, county, school district, junior college district, levee improvement district, drainage district, irrigation district, water improvement district, water control and improvement district, water control and preservation district, freshwater supply district, navigation district, conservation and reclamation district, soil conservation district, communication district, public health district, and river authority; [and]

> (C) an emergency service organization.

*Id.* When arguing that this Court has jurisdiction over its appeal, HWY 3 does not assert that ERCOT qualifies as a governmental entity under these provisions. Moreover, the terms of the provisions would not seem to apply to an entity like ERCOT. In any event, we believe that the reasons compelling our determination that the ERCOT does not qualify under subsection (D) would compel a similar conclusion under subsections (A) through (C).

5

When reaching this conclusion, the court pointed to specific grants of authority to open-enrollment charter schools, including all powers given to traditional public schools under Title 2 of the Education Code. *LTTS Charter Sch.*, 342 S.W.3d at 77 (citing Tex. Educ. Code § 12.104(a)). Furthermore, the court commented that open-enrollment charter schools "have statutory entitlements to state funding" and to services that "school districts receive," are generally subject to the laws and rules pertaining to public schools, and are obligated to comply with many of the requirements of educational programs that apply to traditional public schools, including accountability programs. *Id.* at 78 (citing Tex. Educ. Code §§ 12.103(a), .104, .106(a)). In addition, the court noted that open-enrollment charter schools are subject "to a host of statutes that govern governmental entities outside the Education Code," including statutes imposing open-meetings requirements, public-information requirements, and record-regulation requirements. *Id.* at 78 (citing Tex. Educ. Code §§ 12.1051, .1052). Finally, the court explained that open-enrollment charter schools are expressly considered "'governmental entit[ies]' for . . . [statutes] relating to property held in trust and competitive bidding," "'political subdivision[s]' for . . . [statutes concerning] procurement of professional services," and "'local government[s]' for . . . [statutes governing] authorized investments." *Id.* at 78 (citing Tex. Educ. Code § 12.1053). When summarizing its reasoning, the court stated that it was "confident that the Legislature considers" open-enrollment charter schools as "institution[s], agenc[ies], or organ[s] of government" under subsection 101.001(3)(D) given their statutory status as part of the public school system and given "their authority to wield" the powers given to public schools "and to receive and spend state tax dollars (and in many ways to function as a governmental entity)." *Id.* (internal footnotes omitted) (citing Tex. Educ. Code §§ 12.104(a), .105-.107, .1053).

6

When contending that ERCOT qualifies as a governmental unit under subsection 101.001(3)(D), HWY 3 urges that there are similarities between ERCOT and open-enrollment charter schools. In particular, HWY 3 insists that ERCOT derives its status and authority from laws enacted by the legislature under the constitution and, as support, points to various provisions of the Utilities Code. For example, HWY 3 notes that ERCOT was certified by the Commission under the Code as an independent organization charged with ensuring that buyers and sellers have access to the electric market and ensuring that the electric network is reliable and adequate. Tex. Util. Code § 39.151(a), (c); *see also id.* § 39.151(b) (defining "[i]ndependent organization" as "an independent system operator or other person that is sufficiently independent of any producer or seller of electricity that its decisions will not be unduly influenced by any producer or seller"). Further, HWY 3 notes that the Commission delegated to ERCOT under the Code the power to adopt and enforce "rules relating to the reliability of the regional electrical network and accounting for the production and delivery of electricity among generators and all other market participants." *Id.* § 39.151(d); *see also id.* (providing that "any enforcement actions taken by the organization are subject to commission oversight and review" and that independent organization "is directly responsible and accountable to the commission"); *id.* § 39.151(i) (allowing Commission to delegate to certified organization authority to enforce operating standards and to "oversee transaction settlement procedures"). Moreover, HWY 3 highlights that the Commission has oversight over ERCOT's budget. *See id.* § 39.151(d), (d-1)-(d-4). Finally, HWY 3 contends that the Code imposes requirements on ERCOT that are consistent with a determination that ERCOT is a governmental unit, including constraints on the composition of ERCOT's governing board, *id.* § 39.151(g), (g-1), and obligations to make

7

its meetings "open to the public" and to provide notice to interested parties of its intention to convene a hearing, *id.* § 39.1511.

Unquestionably, the statutory provisions relied on by HWY 3 demonstrate that ERCOT has been delegated great authority and powers by the legislature and that it is a highly regulated entity.[2] However, there are other circumstances in which the legislature exercises great regulatory oversight over organizations and also bestows power on them, but those organizations do not necessarily qualify as governmental units. *See, e.g.*, *id.* §§ 37.051 (requiring electric utility to obtain certificate from Commission before providing service), 181.004 (bestowing onto utilities right to condemn property); *Texas Rice Land Partners, Ltd. v. Denbury Green Pipeline-Tex., LLC*, 363 S.W.3d 192, 197 (Tex. 2012) (discussing statutes giving *private* companies power of eminent domain); *see also Texas Boll Weevil Eradication Found., Inc. v. Lewellen*, 952 S.W.2d 454, 472 (Tex. 1997) (setting out circumstances in which legislature may properly delegate authority to private entities). Accordingly, when deciding whether ERCOT should be considered a governmental unit, we must also consider the other factors addressed by the supreme court in its analysis in *LTTS Charter Schools*.

As a preliminary matter, we note that the legislature's decision to designate an entity like ERCOT as an "independent organization" rather than as an agency or by a similar title is some support for the idea that the legislature did not intend for ERCOT to be a governmental unit. *See* Tex. Util. Code § 39.151(a)-(c). This seems particularly true given the role that entities like ERCOT

---

[2] We note that under the Utilities Code, independent organizations like ERCOT are "subject to review" by the Sunset Advisory Commission, but the Code also specifies that those organizations may not be "abolished" under the Texas Sunset Act. Tex. Util. Code § 39.151(n).

8

play in the recently deregulated electricity market. *See FPL Energy*, 426 S.W.3d at 61; *see also Nucor Steel-Tex. v. Public Util. Comm'n*, 363 S.W.3d 871, 881 (Tex. App.—Austin 2012, no pet.) (explaining that after deregulation, retail and generation markets became subject to competition and customer choice but that transmission utilities are still subject to regulation); *Constellation Energy*, 351 S.W.3d at 591 (noting that retail choice was implemented in 2002 and that "ERCOT is the independent organization the Commission has certified as responsible for, among other things, ensuring the reliability and adequacy of the electric grid, as well as establishing, scheduling, and overseeing transaction settlement procedures").

In any event, key to the supreme court's conclusion were the facts that charter schools are statutorily classified as part of the public school system, *LTTS Charter Sch.*, 342 S.W.3d at 77, and that although they are privately owned, they are the functional equivalent of public-school districts, which by statute qualify as governmental units, *see* Tex. Civ. Prac. & Rem. Code § 101.001(3)(B). Stated differently, charter schools operate parallel to and alternatively to governmental units. In this case, ERCOT is not fulfilling the same role that a government agency is performing and has not been statutorily defined as being a part of a governmental unit. *See Arbor E&T, LLC v. Lower Rio Grande Valley Workforce Dev. Bd., Inc.*, No. 13-13-00139-CV, 2013 Tex. App. LEXIS 14674, at *15-17 (Tex. App.—Corpus Christi Dec. 5, 2013, no pet.) (concluding that local workforce development boards are governmental units, in part, because legislature expressly stated in various statutory provisions that boards are part of local government and are governmental bodies); *University Interscholastic League v. Southwest Officials Ass'n, Inc.*, 319 S.W.3d 952, 957 (Tex. App.—Austin 2010, no pet.) (relying heavily on fact that University Interscholastic League

was statutorily defined as being part of governmental unit when deciding that UIL qualified as governmental unit).[3]

Moreover, the supreme court in *LTTS Charter Schools* determined that open-enrollment charter schools should be treated as governmental units because they are given taxpayer money to use when accomplishing the public goal of educating children and are statutorily entitled

---

[3] In *University Interscholastic League v. Southwest Officials Ass'n, Inc.*, this Court was confronted with deciding whether the UIL was "a governmental unit subject to sovereign immunity" and whether the UIL could pursue an interlocutory appeal of the denial of its plea to the jurisdiction. 319 S.W.3d 952, 962, 963 n.9 (Tex. App.—Austin 2010, no pet.). Although we addressed some of the factors later considered in *LTTS Charter School* when we determined that the UIL was a governmental unit under subsection 101.001(3), we did not have the benefit of the supreme court's analysis from that case because our opinion was issued first.

When reaching our decision, we relied on some characteristics that the UIL and ERCOT share. For example, we noted that the UIL, like ERCOT, is subject to extensive administrative oversight and is authorized to propose and enforce rules that are subject to approval by an administrative agency. *Id.* at 958, 962. However, there are some notable differences between the UIL and ERCOT. For instance, in our analysis in *Southwest Officials*, we greatly emphasized the fact that, unlike here, the statutes governing the UIL expressly provide that the UIL is part of a governmental unit: The University of Texas at Austin. *See id.* at 957 (discussing section 33.083 of Education Code); *see also* Tex. Const. art. VII, § 10 (establishing University of Texas); *Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Texas Political Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 324 (Tex. 2006) (explaining that sovereign immunity extends to universities). Moreover, we also considered the fact that, unlike for ERCOT, the legislature requires the UIL to deposit its funds with the University. *Southwest Officials*, 319 S.W.3d at 958. In addition, we recognized that a federal court had previously determined that the UIL was a state agency, in part, because its employees were paid by and employed by the University. *Id.* at 961 (citing *Saenz v. University Interscholastic League*, 487 F.2d 1026, 1027-28 (5th Cir. 1973)). Finally, we noted that the Education Code requires that all suits against the UIL be filed in Austin, Texas, which is similar to venue restrictions imposed on many suits involving governmental entities, *id.* at 961; however, there is no such obligation imposed by the statutes at issue in this case.

In light of these distinctions and given that our decision in *Southwest Officials* was issued before the supreme court's opinion in *LTTS Charter Schools*, we do not believe that our analysis in *Southwest Officials* compels a determination that ERCOT qualifies as a governmental unit under subsection 101.001(3)(D).

to services that public schools receive. 342 S.W.3d at 78. In this case, ERCOT is not statutorily entitled to any services or benefits that a typical governmental unit might receive. In addition, although HWY 3 correctly points out that the Commission has oversight over ERCOT's budget, this type of regulatory control is not dissimilar from the financial oversight that the legislature has exerted over utilities that are not considered governmental units. *Compare* Tex. Util. Code § 36.001 (authorizing Commission to establish and regulate rates for utility), *with id.* § 39.151(e) (allowing Commission to determine that fees charged by ERCOT are "reasonable and competitively neutral"). Perhaps more importantly, ERCOT does not receive funding from the State; on the contrary, ERCOT charges "wholesale buyers and sellers a system administration fee" to cover its expenses. *See id.* § 39.151(e).

Finally, as mentioned above, the supreme court also explained that open-enrollment charter schools should be deemed governmental units because various statutes expressly equated the schools with governmental entities. *LTTS Charter Sch.*, 342 S.W.3d at 78. Although two statutes allow ERCOT to receive the benefit of computer-network security from a governmental agency if it so desires and to participate in an agency tasked with determining this State's response to drought concerns, *see* Tex. Gov't Code § 2059.058(b)(4) (allowing Department of Information Resources to provide "network security services" to independent organizations like ERCOT); Tex. Water Code § 16.055(b)(13) (designating independent organization like ERCOT as member of drought preparedness council), neither of those statutes equates ERCOT with a government entity. In fact, the provision allowing ERCOT to take advantage of network security expressly states that the service is being offered to entities that are not state agencies, which is some indication that the legislature did not intend for ERCOT to qualify as a governmental unit. *See* Tex. Gov't Code

11

§ 2059.058(b)(4). Moreover, in addition to classifying independent organizations as entities other than state agencies, the provision further distinguishes independent organizations from governmental entities that do not qualify as state agencies, including both houses of the legislature, political subdivisions, and "an agency that is not a state agency, including a legislative agency." *Id.* § 2059.058(b)(1)-(3). Similarly, although HWY 3 correctly points out that a provision of the Utilities Code requires ERCOT's meetings to "be open to the public," Tex. Util. Code § 39.1511, that provision does not explicitly state that ERCOT is obligated to make its meetings public because it is a part of the government or expressly subject ERCOT to all of the requirements of the Open Meetings Act. *See id.* Moreover, the Open Meetings Act does not include independent organizations like ERCOT within its purview. *See* Tex. Gov't Code § 551.001(3) (defining types of "[g]overnmental bod[ies]" subject to requirements of Open Meetings Act); *cf. LTTS Charter Sch.*, 342 S.W.3d at 78 (noting that Education Code specifically stated that open-enrollment charter school is considered governmental body for purposes of Open Meetings Act); *Arbor E&T*, 2013 Tex. App. LEXIS 14674, at *15 (relying on fact that local-workforce-development board was specifically listed as falling under Open Meetings Act and Public Information Act when deciding that board was governmental unit).[4]

---

[4] In its brief, HWY 3 mentions the holding from one of our sister courts that determined that a nonprofit economic-development corporation qualified as a governmental unit and could, therefore, file an interlocutory appeal of the denial of its plea to the jurisdiction. *See City of Leon Valley Econ. Dev. Corp. v. Little*, 422 S.W.3d 37, 40-41 (Tex. App.—San Antonio 2013, no pet.). In reaching its conclusion, the appellate court noted that the corporation derives its "powers, privileges, and functions" from statutes in the Local Government Code and, therefore, determined that it qualified as a governmental unit under subsection 101.001(3)(D) of the Government Code. *Id.* at 40-41. However, the court did not address the other considerations relied on by the supreme court in *LTTS Charter School*. *Id.* Moreover, that case concerned a different entity that derived its authority from statutes that are not at issue in this case. *Id.* In any event, we are not bound by the analysis from our sister court.

For all of these reasons, particularly in light of the analysis from *LTTS Charter School*, we conclude that ERCOT is not a governmental unit as that term is used in section 101.001(3)(D). *See* Tex. Civ. Prac. & Rem. Code § 101.001(3)(D). For that reason, we must also conclude that this Court does not have jurisdiction over HWY 3's interlocutory appeal. *See id.* § 51.014(a)(8).

## CONCLUSION

Having determined that this Court does not have jurisdiction over HWY 3's appeal, we dismiss the appeal for want of jurisdiction.

_____

David Puryear, Justice

Before Justices Puryear, Pemberton, and Field

Dismissed for Want of Jurisdiction

Filed: March 12, 1205

13