# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

NO. 03-21-00572-CR
NO. 03-21-00573-CR
NO. 03-21-00574-CR

---

**Evan Elon Webber, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE 20TH DISTRICT COURT OF MILAM COUNTY
NOS. CR26,337, CR26,338, & CR26,339
THE HONORABLE JOHN YOUNGBLOOD, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Evan Elon Webber was convicted of two counts of possession of child pornography and one count of online solicitation of a minor, and he was sentenced to ten years' imprisonment for each count. *See* Tex. Penal Code §§ 12.34, 33.021, 43.26. In four issues on appeal, Webber contends that the trial court erred by allowing the State to introduce extraneous-act evidence after having failed to give reasonable notice, allowing an expert witness to testify when the State did not provide timely notice, allowing the indictment to be amended, and submitting erroneous venue instructions. We will affirm the trial court's judgments of conviction.

## BACKGROUND

After detecting the presence of what was believed to be two videos of child pornography, a Facebook employee sent a notification to the National Center for Missing and

Exploited Children ("Center"). The Center then sent a report to the Texas Attorney General's Office, which assigned an investigator to the case. The investigator learned that the Facebook account that received the videos was an account with Webber's name, and the investigator obtained a search warrant for the content from that Facebook account as well as the one for the person who sent the videos, M.R., who the investigator learned was a fourteen-year-old girl. As a result of the investigation, Webber was charged with six sex offenses involving at least two girls—M.R. and E.S.—who were fourteen years old at the time of the alleged offenses, and the same attorney was appointed to represent Webber in all the charges. Months later and before trial, the State elected not to pursue the charges involving anyone other than M.R., and a trial was scheduled for the following charges: two counts for possession of child pornography and one count of online solicitation of a minor. Webber was arrested while he was in Oklahoma. He was transported to Texas, and a trial was held in Milam County, Texas.

During the guilt–innocence portion of the trial, the following witnesses testified: the investigator, who discussed the information he retrieved from the Facebook accounts; a digital forensics expert, who testified regarding photos that he discovered on Webber's phone; and M.R.'s high school principal, who identified M.R. from one of the videos transmitted through Facebook and testified that M.R. went to high school and was fourteen years old at the relevant time. In addition, over twenty exhibits were admitted into evidence. At the beginning of this phase, the trial court admitted as State's exhibits 1 and 2 letters that Webber wrote to individuals while he was in jail awaiting trial in this case in which he discussed what types of plea deals he would and would not consider.

In his testimony, the investigator explained that Webber's Facebook account had been verified through Webber's phone and through his email address, meaning that as part of the

2

log-in process, Facebook had sent verifying information to the phone and to the email address that were used to complete the log-in process. Further, the investigator explained that the IP address for the computer sending the two videos belonged to M.R.'s mother who lived in Rockdale, Texas. During the investigator's testimony, a portion of a Facebook chat between accounts attributed to Webber and E.S. was admitted into evidence as State's exhibit 4 and showed Webber asking E.S. for the contact information for M.R. In addition, a copy of a Facebook chat exchange between accounts attributed to Webber and M.R. initiated shortly after Webber communicated with E.S. was admitted into evidence and contained, among others, the following exchanges:

Webber tells M.R. that a friend gave him her contact information because he heard she was looking for an "older guy to make money" and that he lives in Cameron;

M.R. states that she is fourteen years old and lives in Rockdale;

Webber and M.R. send multiple exchanges regarding how much money he would pay to have sex with her;

Webber sends M.R. a photo of himself with his shirt raised and wearing light colored shorts with the material of the shorts placed to display his penis through the shorts;

Webber sends a photo of a stack of money after M.R. inquires whether he has money to pay;

Webber sends a photo of himself shirtless and wearing dark shorts, and the photo shows him grabbing the portion of the shorts covering his penis;

M.R. sends a photo of herself from her school;

Webber sends a video of a man masturbating and asks M.R. if she got the video;

Webber and M.R. discuss what types of sexual activity she would participate in;

Webber offers to pay extra money for pictures of M.R. in her bra and underwear;

3

M.R. offers to send a video of her naked, and Webber states that he would pay her for that type of video;

M.R. sends a video of her in the shower with her breasts exposed;

M.R. sends a video of her masturbating and showing her vagina;

Webber agrees to pay her for the videos after complimenting the appearance of her vagina; and

Webber asks if M.R. could sneak out of her house and offers to pay her $800 for anal intercourse that day.

Moreover, the investigator related that the internet service provider verified that Webber was getting service at the apartment where he lived in Cameron, Texas, and that the Center provided an approximate location of the receiver of the videos as being in Cameron. Further, the investigator testified that his investigation of the communications between Webber and M.R. showed that Webber was in Milam County, Texas, during those exchanges. However, the investigator admitted that he was unable to determine where Webber was when he viewed the videos and that Webber was in Oklahoma when arrested. The investigator admitted that Webber could have been in Oklahoma or any Texas county when he viewed the videos, that it was not possible to tell the location of Webber's phone when it was used to access a computer, and that he could not say if Webber's phone was in Milam County when the videos were accessed. However, the investigator confirmed that the phone in Webber's possession when he was arrested had the same phone number as the phone number associated with Webber's Facebook account.

Additionally, the investigator explained that while searching M.R.'s Facebook account, he found a picture of her that had been changed with computer filters. When discussing his search of Webber's Facebook account, the investigator explained that Webber sent the photos

4

of him in his shorts to multiple individuals. The trial court admitted State's exhibits 13 to 17, which were Facebook exchanges in which he sent those photos to five people in 2017 and 2018. The trial court also admitted State's exhibits 22 to 27, which were also Facebook messages between Webber and others in which he stated that he lived in Cameron, Texas, and in which he stated in one exchange that he was also in the Dallas area.

Following the investigator's testimony, the digital forensics expert testified that he recovered two photos from Webber's cell phone, and the photos were admitted as exhibits. The first showed a man in shorts holding his penis through his shorts like the photo that Webber sent to M.R. and others through Facebook, but this photo stopped at the neck and did not show the person's face. The digital forensics expert explained that the photo substantially matched the photo that Webber sent to others. The second photo was the photo of M.R. that the investigator found on M.R.'s Facebook account that had filters applied to it, and the digital forensics expert stated that this photo substantially matched the photo of M.R.

After considering the evidence, the jury found Webber guilty of all three charged offenses. During the punishment phase, the investigator was called as a witness again and testified that before this investigation, he had investigated Webber for another offense. More specifically, the investigator related that he received a call from a pawn shop owner who explained that Webber had sold a computer with a video showing a man engaging in sexual activity with two prepubescent girls. Further, the investigator testified that he searched Webber's home during the former investigation and that Webber was charged with twelve counts of possession of child pornography. Next, the investigator explained that Webber entered into a plea agreement in which he agreed to plead guilty to less serious charges of improper visual recording. The trial court admitted as State's exhibit 28 the indictment from the former case

listing the twelve counts of possession of child pornography and admitted as State's exhibits 29 and 30 two orders showing that Webber pleaded guilty to improper visual recording and placing him on deferred-adjudication community supervision.

In addition, the investigator discussed additional Facebook chats between Webber and E.S., and the trial court admitted exhibits 31 to 34 showing the following communications between them:

> Webber asks E.S. to send him "sexy" pictures of her;
>
> Webber asks E.S. if he needed to bring condoms and if she will engage in oral and anal sex;
>
> Webber says he will drive to see her and asks why she was not naked yet before she responds two hours later to say "thank you"; and
>
> Webber tells E.S. that he wants to "have fun" with her friend too and tells her to ask her friend if she wants to participate.

At the conclusion of the punishment phase, the jury sentenced Webber to ten years' imprisonment for each of the three charges.

## DISCUSSION

In four issues on appeal, Webber contends that the trial court erred by overruling his objection to the State offering extraneous-act evidence, overruling his objection to the State calling a digital forensics expert as a witness, allowing the State to amend the indictment over his objection, and submitting an erroneous venue instruction in the jury charge.

### Extraneous Act Evidence

First, Webber contends that the trial court erred by overruling his objection to the admission of extraneous-act evidence during the guilt–innocence phase and during the

6

punishment phase. Months before the trial started, Webber filed a request for notice of the State's intent to use extraneous-act evidence at trial. In the days leading up to trial, the State informed Webber that it planned to introduce copies of letters that he wrote while he was in jail, evidence relating to the contemporaneous charges for which Webber had been indicted before the State elected not to pursue those charges, and evidence regarding his being charged with multiple counts of possession of child pornography before agreeing to plead guilty to lesser charges and being placed on deferred-adjudication community supervision.[1] In response to receiving this information, Webber filed a motion to exclude the evidence arguing that the State's disclosure was not timely, and the trial court held a hearing on the issue outside the presence of the jury. After considering the parties' arguments, the trial court denied the motion to exclude.

On appeal, Webber contends that he requested notice regarding extraneous-act evidence more than two years before trial but did not receive the notice until a few days before the start of trial and asserts that the delay violated the reasonable notice requirements found in Rule of Evidence 404(b) and subsection (3)(g) of Article 37.07 of the Code of Criminal Procedure. *See* Tex. Code Crim. Proc. art. 37.07, § (3)(g); Tex. R. Evid. 404(b); *see also Hayden v. State*, 66 S.W.3d 269, 272 (Tex. Crim. App. 2001) (noting that whether delivery "constitutes reasonable notice depends in part on the time of that delivery"). Moreover, Webber asserts that those provisions require notice for conduct beyond acts deemed bad or unlawful. *See Bishop v. State*, 869 S.W.2d 342, 345 (Tex. Crim. App. 1993); *Fain v. State*, 986 S.W.2d 666, 683 (Tex. App.—Austin 1998, pet. ref'd). Although Webber concedes that there is no formal

---

[1] The State also indicated that it would be introducing recordings of Webber's phone calls while he was in jail, but no jail recordings were admitted at trial.

requirement that the notice be in writing, *see Hayden*, 66 S.W.3d at 273; *Chimney v. State*, 6 S.W.3d 681, 694-95 (Tex. App.—Waco 1999, pet. ref'd), he asserts that the type of notice provided in this case was insufficient. Finally, Webber asserts that the failure to comply with the notice requirements harmed him by affecting his substantial rights and that, therefore, this Court should reverse his convictions and remand the case for a new trial. *See* Tex. R. App. P. 43.2.

In making these claims, Webber specifically challenges the trial court's rulings admitting the following State's exhibits during the guilt–innocence phase: Exhibits 1 and 2, which were the letters Webber wrote while he was in custody for this case; Exhibit 4, which was the log of a portion of Webber's chat exchanges with E.S.; Exhibits 13 to 17, which were logs of Webber's chat exchanges with individuals in which he sent photos of himself that he also sent to M.R.; and Exhibits 22 to 27, which were logs of Webber's chat exchanges with individuals in which he discussed where he lived. Webber also challenges the propriety of the trial court's admitting the following State's exhibits during the punishment phase: Exhibits 28 to 30, which were the prior indictment charging Webber with multiple counts of possession of child pornography and the two orders in that case placing him on deferred adjudication for less serious charges; and Exhibits 31 to 34, which were portions of the chat log between Webber and E.S. chronicling sexual communication between them.

Rule 404 governs the admission of extraneous-act evidence and specifies that if a defendant makes a timely request, the State "must provide reasonable notice before trial that [it] intends to introduce such evidence" unless the crime, wrong, or other act "aris[es] in the same transaction" as the charged offense. Tex. R. Evid. 404(b). Section 3 of Article 37.07 of the Code of Criminal Procedure governs the use of extraneous-act evidence during punishment and directs that "[o]n timely request of the defendant, notice of intent to introduce evidence under

8

this article shall be given in the same manner required by Rule 404(b), Texas Rules of Evidence." *See* Tex. Code Crim. Proc. art. 37.07, § 3(g).

For purposes of resolving this issue on appeal, we will assume that the exhibits constitute evidence falling under Rule 404(b) and Article 37.07 and that the State did not provide reasonable notice of its intent to use that evidence. *See id.*; Tex. R. Evid. 404(b). Because the alleged error in this case involves evidentiary rulings, the error is subject to the harmless error analysis for non-constitutional errors. *See Hernandez v. State*, 176 S.W.3d 821, 824 (Tex. Crim. App. 2005). Under that standard, appellate courts disregard the error unless it affected the defendant's substantial rights. Tex. R. App. P. 44.2(b).

Typically, when determining whether a defendant's substantial rights are affected, appellate courts consider whether "the error had a substantial and injurious effect or influence in determining the jury's verdict." *Parlin v. State*, 591 S.W.3d 214, 224 (Tex. App.—Houston [1st Dist.] 2019, no pet.). This is the standard that appellate courts use when assessing the effect of the erroneous admission of evidence under an evidentiary rule or statute that prohibits the admission of that type of evidence. *Roethel v. State*, 80 S.W.3d 276, 282 (Tex. App.—Austin 2002, no pet.). "That test is appropriate because the erroneous admission of the evidence thwarts the . . . purpose of shielding the jury from evidence used for improper reasons." *Id.*

However, the notice requirements in Rule 404(b) and Article 37.07 "do not relate to the substantive admissibility of the evidence," and "[t]he lack of notice does not render the evidence inherently unreliable, but instead raises a question about the effect of procedural noncompliance." *See id.* Accordingly, we must assess the harm from the violation of the notice provisions against their purpose. *See Hernandez*, 176 S.W.3d at 825; *Roethel*, 80 S.W.3d at 281. The purpose of the notice provisions is to prevent surprise, *Hayden*, 66 S.W.3d at 272, by

9

"enabl[ing] the defendant to prepare to meet the extraneous offense evidence," *Roethel*, 80 S.W.3d at 282. For that reason, appellate courts "examine the record to determine whether the deficient notice resulted from prosecutorial bad faith or prevented the defendant from preparing for trial." *Id.* Regarding the second factor, appellate courts consider "whether the defendant was surprised by the substance of the [evidence] and whether that affected his ability to prepare cross-examination or mitigating evidence." *Id.*

As set out earlier, Webber was initially charged with six offenses, but the State chose to move forward only with the charges involving M.R. On appeal, Webber asserts that all the disputed exhibits except exhibits 28 to 30 (indictment and deferred adjudication orders) and Exhibits 1 to 2 (letters written by Webber while in jail) were evidence relating to the other three offenses that the State elected not to pursue. During a hearing on Webber's motion to exclude extraneous-act evidence, Webber's attorney admitted that he had received discovery on the "three other indictments" because he was also the attorney representing Webber in those cases and had made copies out of the files for the other three charges. Similarly, Webber's attorney admitted that he knew about the prior deferred adjudications. Further, Webber's attorney stated that the State clarified days before trial which of Webber's letters it intended to introduce at trial and furnished copies of those letters. The two letters admitted at trial are less than a page in length, and each contains a few sentences in which Webber described what kind of plea agreements he would consider taking.

Regarding the two jail letters, the State explained that it sent Webber's attorney an email saying that it was planning on using at trial some letters that Webber had written while in jail, that the letters were only a few pages in length, and that after Webber's attorney asked to be informed of the specific letters the State intended to use, it sent Webber's attorney copies of

10

those letters. Concerning the evidence learned in the other cases, the State emphasized that Webber's attorney had been aware of the other offenses for years and had been given copies of "all of the discovery" for those offenses. Further, the State related that Webber's attorney had plenty of notice that evidence from those other offenses would be introduced at trial because all six offenses "stem from a single search warrant" that revealed all the criminal activity at issue in the six offenses.

In light of the preceding, we cannot conclude that the State acted in bad faith when it allegedly failed to provide sufficient notice. Similarly, we cannot conclude that the record shows that Webber was surprised by the extraneous-act evidence or was unable to prepare for trial. *See Hernandez*, 176 S.W.3d at 825 (explaining that admission of evidence even though notice provision was not complied with might "have had a substantial effect or influence on the jury's verdict" but that this effect or influence was not injurious "if the defendant was not surprised by the evidence"). As set out above, Webber's attorney admitted that he was aware of the other offenses, had received and gone through discovery in the other charges, and believed that he would be representing Webber in those cases until a few weeks before trial in this case. *Cf. Hayden*, 66 S.W.3d at 272 (concluding that delivery of witness statements detailing extraneous offenses can satisfy notice requirement). Similarly, his attorney stated that he had already been aware that Webber had twice been placed on deferred adjudication. Further, the evidence pertaining to the other offenses was gathered through the same search warrant and was relevant to the three offenses involving M.R. *Cf. Hernandez*, 176 S.W.3d at 825 (explaining that "it strains credulity to think that this defendant in this case was not on notice that the State intended to use" extraneous-act evidence "as part of its evidence or that he had not prepared to

11

defend against their use" and noting that State was aware of evidence and had furnished defendant with copy).

Additionally, Webber's attorney did not ask for a continuance. *Cf. McDonald v. State*, 179 S.W.3d 571, 578 (Tex. Crim. App. 2005) (explaining that "had there been legitimate surprise that required re-evaluation of trial strategy" from failure to provide notice of extraneous-act evidence, "the appellant could have requested a continuance"). Moreover, when cross-examining the State's witnesses, Webber presented his defenses that the evidence did not establish where the recipient of M.R.'s videos viewed them, that Webber's Facebook account could have been hacked and accessed from anywhere in the world, and that the police did not perform a thorough investigation in this case. During his closing, Webber similarly presented his defenses regarding venue and regarding the police not properly investigating the case, argued that the chat exchanges in which Webber told others that he lived in Cameron did not establish that he lived in Cameron at the relevant time because that evidence also established that he lived in the Dallas area during that time, and suggested that the evidence showing images of Webber being sent to others did not prove that Webber sent those pictures. Moreover, "[i]t is hard to imagine that [Webber's] defense would have been altered in any meaningful way" had the State disclosed its intent to introduce evidence of certain extraneous acts earlier. *See id.*

On this record, we conclude that Webber's substantial rights were not affected by the allegedly deficient notice. Accordingly, we overrule Webber's first issue on appeal.

**Notice Regarding Expert Witness**

In his second issue on appeal, Webber argues that the trial court erred by allowing one of the State's experts to testify about the online-solicitation charge over his objection.

12

Months before the trial started, Webber requested that the State disclose its expert witnesses, and the State filed its notice twenty days before trial. *See* Tex. Code Crim. Proc. art. 39.14(b). In its response, the State identified one witness as a digital forensics expert and another witness as a fingerprint expert. Seven days before trial, the State filed an amended notice adding another witness whom the State asserted would also testify as a digital forensics expert. Before the additional expert testified, Webber objected that the third witness had not been timely disclosed. The State explained that after it filed its first notice, it learned from its first digital forensics expert that the expert believed that the additional witness was "the more appropriate witness" for a portion of the testimony. Further, the State explained that after learning this information, it filed the supplemental notice "as timely as [it] could." The trial court then overruled Webber's objection.

On appeal, Webber highlights that Article 39.14 of the Code of Criminal Procedure requires the State to provide notice regarding the expert witnesses that it intends to call at least twenty days before trial if the defendant requests notice, *see id.*, and argues that because he made that request months before the trial started, the trial court erred by overruling his objection to the State's addition of the previously undisclosed third expert witness. Further, Webber asserts that the State mentioned during the hearing that it learned of the alleged need for an additional expert after talking with one of the other experts "less than 20 days before trial." Moreover, Webber contends that the State's failure to obtain this information sooner "is tantamount to a willful violation of the 20-day notice requirement."[2] Additionally, Webber

---

[2] As support for his arguments, Webber refers to a recent decision by one of our sister courts of appeals. *See State v. Heath*, 642 S.W.3d 591, 597 (Tex. App.—Waco 2022, pet. granted). However, we find that case to be distinguishable. *See id.* (discussing failure to

argues that he could not have and should not have had to anticipate that another digital forensics expert would be called and should have been able to rely on the first disclosure notice. Webber also asserts that the alleged error affected his substantial rights and that this Court should reverse his conviction for online solicitation and remand for a new trial. *See* Tex. R. App. P. 43.2(d).

Subarticle 39.14(b) of the Code of Criminal Procedure provides that if a party requests the disclosure of "the name and address of each person the" opposing party plans to call as an expert witness, the opposing party must disclose that information "not later than the 20th day before the date that jury selection in the trial is scheduled to begin" or "the presentation of evidence is scheduled to begin" in a bench trial. Tex. Code Crim. Proc. art. 39.14(b). "If [a] trial court allows a witness who was not" timely disclosed under Subarticle 39.14(b) to testify, appellate courts "review that decision for an abuse of discretion." *See Hamann v. State*, 428 S.W.3d 221, 227 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). Under that standard, a trial court's ruling will only be deemed an abuse of discretion if it is so clearly wrong as to lie outside the zone of reasonable disagreement, *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002), or is arbitrary or unreasonable, *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). Stated differently, the ruling will be upheld provided that the trial court's decision "is reasonably supported by the record and is correct under any theory of law applicable to the case." *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005). In addition, an appellate court reviews the trial court's ruling in light of the record before the court "at the time

---

disclose evidence under Subarticle 39.14(a), which requires disclosure "as soon as practicable," and not addressing Subarticle 39.14(b)). In any event, the analysis from that case is not binding on this Court. *See HWY 3 MHP, LLC v. Electric Reliability Council of Tex.*, 462 S.W.3d 204, 211 n.4 (Tex. App.—Austin 2015, no pet.) (explaining that analysis from sister court of appeals is not binding precedent).

14

the ruling was made." *Khoshayand v. State*, 179 S.W.3d 779, 784 (Tex. App.—Dallas 2005, no pet.).

"In considering whether the trial court abused its discretion, we consider any showing of bad faith on the part of the prosecutor in the late designation and whether the defendant could reasonably anticipate that the witness would testify although his name was not previously disclosed." *Branum v. State*, 535 S.W.3d 217, 226 (Tex. App.—Fort Worth 2017, no pet.). "In determining whether the State acted in bad faith, the principal area of inquiry is whether the defense shows that the State intended to deceive the defendant by failing to provide the defense with a witness's name." *Hamann*, 428 S.W.3d at 228. When deciding if a defendant could have reasonably anticipated that the witness would be called, appellate courts may consider "(1) the degree of surprise to the defendant; (2) the degree of disadvantage inherent in that surprise (i.e., the defendant was aware of what the witness would say, or the witness testified about cumulative or uncontested issues); and (3) the degree to which the trial court was able to remedy that surprise (i.e., by granting the defense a recess, postponement, or continuance, or by ordering the State to provide the witness's criminal history)." *Id.*

In this case, there was no showing that the State failed to disclose the third witness through bad faith; instead, the State explained that it only became aware of the need for the additional witness after one of its other experts indicated that it would be more appropriate for the third witness to discuss portions of the forensic analysis performed in the case and that it amended its notice "as timely as [it] could" after receiving this information. *See State v. LaRue*, 108 S.W.3d 431, 434 (Tex. App.—Beaumont 2003) (defining willful act as one that is "done voluntarily and intentionally, with the specific intent to disobey the law"), *aff'd*, 152 S.W.3d 95 (Tex. Crim. App. 2004). In addition, although Webber may not have been able to reasonably

15

anticipate that this particular expert would be called as a witness, he had previously been informed that he had been charged with online solicitation and that another digital forensics expert would be called to testify. *Cf. Hamann*, 428 S.W.3d at 228 (noting that although identity of fingerprint expert was surprise to defendant, degree of disadvantage "was minimal because [defendant] was aware that the State would call a fingerprint expert"). Importantly, after learning about the third witness, Webber did not ask the trial court for a continuance based on the late designation, rendering any error harmless. *Barnes v. State*, 876 S.W.2d 316, 328 (Tex. Crim. App. 1994); *Branum*, 535 S.W.3d at 226-27.

Based on the preceding, we conclude that the trial court did not abuse its discretion by allowing the third expert to testify over Webber's objection and, therefore, overrule Webber's second issue on appeal. *Branum*, 535 S.W.3d at 227.

**Indictment Amendment**

In his third issue, Webber contends either that the State tried but failed to make an amendment to the online-solicitation indictment or that the trial court erred by allowing the State to amend the indictment. Regarding the online-solicitation charge, the indictment originally made the following allegations:

> Webber . . . did then and there, being a person 14 years of age or older, intentionally communicate over the Internet, by electronic mail, by commercial online service, by text message or other electronic message service or system in a sexually explicit manner with a minor, M.R., to wit: by video message and/or text messages, with the intent to arouse and gratify the sexual desire of the said defendant and the said minor, and the said M.R. was then and there a person 14 years of age at the time of the commission of the said offense . . . .

During a hearing held approximately one month before trial, Webber's attorney informed the trial court that the State would be amending the indictment, that the State would be

16

sending him the amendment in a few days, and that he would object if he had any concerns about the amendment. A few days before trial, the State filed a notice of intent to amend the indictment and explained that the online-solicitation charge should be amended to allege as follows:

> Webber . . . did then and there, being a person who is 17 years of age or older, with the intent to commit the offense of possession of child pornography, communicate over the internet, by electronic message, or through a commercial online service in a sexually explicit manner with a minor, M.R., and M.R. was younger than 17 years of age at the time . . . .

In another pretrial hearing held the same day, the State provided the court with a copy of the amended indictment and informed the trial court that it gave a copy of the amended indictment to Webber's attorney and that his attorney reviewed the document. At the hearing, Webber's attorney asserted that the statute serving as the basis for the charge unconstitutionally infringes on his right to free speech but did not make any other objection. The trial court overruled Webber's constitutional challenge and approved the amendment to the indictment.

On appeal, Webber notes that under the Code of Criminal Procedure an indictment may not be amended when a defendant objects to the amendment "if the amended indictment . . . charges the defendant with an additional or different offense or if the substantial rights of the defendant are prejudiced." Tex. Code Crim. Proc. art. 28.10(c). Further, Webber notes that the phrase "different offense" means a different statutory offense. *See Marks v. State*, 525 S.W.3d 403, 412 (Tex. App.—Houston [14th Dist.] 2017), *aff'd*, 560 S.W.3d 169 (Tex. Crim. App. 2018). Building on the preceding, Webber argues that the amendment charged him with a different offense because the original indictment made allegations based on the language under a former version of the online-solicitation statute but that the amended indictment was

17

based on the current version of the online-solicitation statute. *See* Tex. Pen. Code § 33.021; Act of May 25, 2005, 79th Leg., R.S., ch. 1273, § 1, sec. 33.021, 2005 Tex. Gen. Laws 4049, 4050 (amended 2015) ("Former § 33.021"). For these reasons, Webber urges that the trial court erred by amending the indictment over his objection. *See* Tex. Code Crim. Proc. art. 28.10(c). Alternatively, Webber contends that the amendment was ineffective because it was not interlineated on the face of the original indictment or on a photocopy of the indictment and because the trial court did not sign an order effectuating the amendment after orally approving it. *See Riney v. State*, 28 S.W.3d 561, 565-66 (Tex. Crim. App. 2000). Further, Webber asserts that the errors affected his substantial rights and that, therefore, this Court should reverse his online-solicitation conviction and remand for a new trial. *See* Tex. R. App. P. 43.2.

Although Webber made a constitutional objection to the online-solicitation statute during the pretrial hearing addressing and approving the State's proposed amendment, he did not object on the ground that the amended indictment charged him with a different offense. *See* Tex. Code Crim. Proc. art. 28.01(c). Under Article 1.14 of the Code of Criminal Procedure, a defendant "waives and forfeits the right to object" "to a defect, error, or irregularity of form or substance in an indictment" and "may not raise the objection on appeal" if he "does not object to [the] defect, error, or irregularity . . . before the date on which the trial on the merits commences." *Id.* art. 1.14(b); *see Jones v. State*, 907 S.W.2d 850, 857 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd); *see also Trevino v. State*, 470 S.W.3d 660, 662 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) (concluding that defendant failed to preserve complaint regarding amendment to indictment by failing to object); *Ex parte Jessep*, 281 S.W.3d 675, 680 (Tex. App.—Amarillo 2009, pet. ref'd) (noting that "[t]he statute serves the purpose of ensuring that

18

indictment defects may be objected to and repaired pretrial but would not invalidate an otherwise valid conviction if not raised before trial").

Webber's complaint that the amendment charged him with a different offense concerns an alleged "defect, error, or irregularity of form or substance," and he was therefore "required to raise an objection prior to trial." *Jones*, 907 S.W.2d at 858. By failing to object before trial to the allegedly improper amendment on the grounds presented on appeal, Webber may not present his arguments now. *See* Tex. Code Crim. Proc. art. 1.14(b); Tex. R. App. P. 33.1; *Duffy v. State*, 33 S.W.3d 17, 26 (Tex. App.—El Paso 2000, no pet.); *see also Jenkins v. State*, 592 S.W.3d 894, 902 (Tex. Crim. App. 2018) (recognizing that Texas law requires defendant to object to any error in indictment before trial); *Darcy v. State*, 488 S.W.3d 325, 327 (Tex. Crim. App. 2016) (noting that preservation of error is systemic requirement on appeal); *Blackshear v. State*, 385 S.W.3d 589, 591 (Tex. Crim. App. 2012) (observing that reviewing courts should not address merits of issue that has not been preserved for appeal); *Babinaux v. State*, No. 01-19-00279-CR, 2020 WL 4457983, at *2 (Tex. App.—Houston [1st Dist.] Aug. 4, 2020, no pet.) (mem. op., not designated for publication) (concluding that defendant failed to preserve issue addressing "the amendment procedure used" where he did not file response to motion to amend and did not object pretrial); *Marks*, 525 S.W.3d at 412 (explaining that amendment does not charge defendant with different offense "if the amendment alters an element of the offense charged").

Regarding Webber's argument that the amendment was ineffective, Webber asserted for the first time during the first day of trial that the amendment was improper because no interlineations were made and because the trial court did not sign an order. Assuming that the trial court erred by overruling the objection, *see Tata v. State*, 446 S.W.3d 456, 461-62 (Tex.

19

App.—Houston [1st Dist.] 2014, pet. ref'd) (concluding that motion to modify indictment and trial court granting request did not constitute amendment where no document amending indictment was incorporated into record), we would be unable to sustain Webber's third issue because he was not harmed by the alleged error.

In determining whether Webber was harmed, we must bear in mind the nature of the alleged error. Article 28.10 allows the indictment to be amended at any time before the date that the trial commences. Tex. Code Crim. Proc. art. 28.10. The statute provides that the defendant is entitled to at least ten days to respond to the proposed amendment if the defendant requests that extension, but Webber did not request that time. *See id.* art. 28.10(a). Similarly, an indictment cannot be amended over a defendant's objection if it charges the defendant with an additional or different offense or prejudices the defendant's substantial rights, but Webber did not object on those grounds. *See id.* art. 28.10(c). Accordingly, the alleged error is not whether it was improper for the indictment to have been amended under Article 28.10 but whether all the steps necessary to amend had been completed.

Assertions that an indictment was not properly amended "are subject to harmless-error review." *Hamann*, 428 S.W.3d at 225. Those types of claims assert non-constitutional errors for purposes of conducting a harm analysis. *Id.*; *see Gray v. State*, 159 S.W.3d 95, 98 (Tex. Crim. App. 2005). Any non-constitutional error "that does not affect substantial rights must be disregarded." Tex. R. App. P. 44.2(b). An error affects a substantial right "when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). After looking at the record as a whole, an appellate court must conclude that the error is harmless and uphold the conviction if it appears the error "did not influence the jury, or had but a slight effect." *Johnson v. State*, 967 S.W.2d

20

410, 417 (Tex. Crim. App. 1998). "The critical inquiry is whether the indictment as written sufficiently informed the defendant of the charge against him to allow him to prepare an adequate defense at trial and whether prosecution under the original indictment would subject the defendant to the risk of being prosecuted later for the same crime." *Hamann*, 428 S.W.3d at 226.

In this case, the original indictment identified the offense as online solicitation of a minor, referenced the correct statutory provision governing that offense, and identified the minor victim. Further, the indictment alleged that Webber intentionally communicated with her in a sexually explicit manner "over the Internet, by electronic mail, by commercial online service, by text message or other electronic message service or system." These elements are the same under the current version of the online-solicitation statute and the prior version forming the basis for the original indictment. *See* Tex. Penal Code § 33.021(b); Former § 33.021(b).

When asserting that his substantial rights were affected, Webber correctly points out that the original indictment also alleged under the prior version of the online-solicitation statute that he communicated with M.R. with the intent to arouse or gratify his or her sexual desire rather than allege under the current statute and as in the amendment that he communicated with her with the intent to commit the offense of possession of child pornography. Further, Webber correctly notes that the Court of Criminal Appeals declared unconstitutional the prior version of the statute prohibiting communication with the intent to arouse or gratify the sexual desire of the offender or victim. *See Ex parte Lo*, 424 S.W.3d 10, 26 (Tex. Crim. App. 2013). However, the other two indictments in this case charged Webber with possession of child pornography, alleged the same offense date as the online-solicitation charge, and identified the statute prohibiting the possession of child pornography. Moreover, Webber was informed of the State's desire and need to amend the indictment almost a month before trial, was given a copy of

21

the proposed amendment days before the trial commenced, and did not request any additional time to review the proposed amendment. Finally, the specificity in the indictment and the record were sufficient to allow Webber to raise a double-jeopardy defense if the State attempted to try him again for the same offense. *See Tucker v. State*, No. 10-17-00154-CR, 2018 WL 6543944, at *5 (Tex. App.—Waco Dec. 12, 2018, pet. ref'd) (mem. op., not designated for publication).

In light of the preceding, the nature of the alleged error, and the record for all three offenses, we cannot conclude that the original indictment did not provide Webber notice of the charge against him or allow Webber to prepare a defense or that the alleged error had a substantial and injurious effect or influence in determining the jury's verdict. Accordingly, we conclude that Webber's substantial rights were not affected by the alleged error and, therefore, overrule his third issue on appeal.

**Venue Instructions**

In his final issue on appeal, Webber argues that the trial court submitted erroneous venue instructions in the jury charge for the online-solicitation count. More specifically, Webber contends that the jury charge contained instructions under Articles 13.01 and 13.19 of the Code of Criminal Procedure but that it should have included instructions under Article 13.25 instead because online solicitation is a crime involving a computer. *See* Tex. Code Crim. Proc. arts. 13.01, .19, .25. Moreover, Webber asserts that he objected to the erroneous instructions and that his conviction for online solicitation should be reversed and remanded for new trial because he suffered some harm from the erroneous instructions. *See* Tex. R. App. P. 43.2.

When addressing an issue regarding an alleged jury-charge error, appellate courts must first decide whether there is error before addressing whether the alleged error resulted in

22

any harm. *See Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If an appellate court determines that there is error present in a jury charge, it must then evaluate the harm caused by the error. *See id.* The amount of harm needed for a reversal depends on whether a complaint regarding "that error was preserved in the trial court." *Swearingen v. State*, 270 S.W.3d 804, 808 (Tex. App.—Austin 2008, pet. ref'd). If no objection was made, a reversal is warranted only if the error "resulted in 'egregious harm.'" *See Neal v. State*, 256 S.W.3d 264, 278 (Tex. Crim. App. 2008) (quoting *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)). However, if the defendant made a timely objection, as in this case, reversal is required if there has been "some harm." *Ngo*, 175 S.W.3d at 743 (quoting *Almanza*, 686 S.W.2d at 171).

The venue portion of the jury charge for the online-solicitation charge provided, in relevant part, as follows:

> Venue is the county where the prosecution of a criminal offense is begun and tried. Venue is not a criminative fact and therefore not an element of the offense. To sustain the allegation of venue, it shall only be necessary for the State to prove by the preponderance of the evidence that by reason of the facts in the case, the county where such prosecution is carried on has venue.
>
> . . .
>
> Offenses committed wholly or in part outside this State may be prosecuted in any county in which the offender is found or in any county in which an element of the offense occurs.
>
> If an offense has been committed within the state and it cannot readily be determined within which county or counties the commission took place, trial may be held in the county in which the defendant resides, in the county in which he is apprehended, or the county to which he is extradited.

The instructions generally tracked the language from Articles 13.01 and 13.19 of the Code of Criminal Procedure. *See* Tex. Code Crim. Proc. arts. 13.01, .19. Webber contends that the jury should have instead been instructed under Article 13.25, which explains that for

offenses under Chapter 33 of the Penal Code, including online solicitation, the defendant "*may be prosecuted in*" four places: three of which Webber does not contend apply in this case and the final place being "any county in which an individual who is a victim of the offense resides." *Id.* art. 13.25(b) (emphasis added).

From the language of Article 13.25, Webber contends that this statute was the proper one because the evidence at trial established that M.R. lived in Rockdale, Texas, at the time of the offense; that the trial court could have taken judicial notice that Rockdale is in Milam County; and that, therefore, the requirements of Article 13.25 were satisfied because the charged offense was one under Chapter 33 of the Penal Code and because the evidence established where M.R. resided.

"The determination of whether one venue statute or another applies to a particular case is a mixed question of law and fact." *Stewart v. State*, 44 S.W.3d 582, 586 (Tex. Crim. App. 2001). "The trial court must examine the facts of the case and apply the statutory requirements to those facts to determine" which venue statute applies. *Id.* "Determining which venue statute is applicable does not involve an evaluation of credibility or demeanor"; rather, "[i]t involves an examination of the facts as they appear on the record, and a determination of which venue statute is proper in light of those facts." *Id.* Accordingly, appellate courts review determinations regarding which "venue statute is applicable *de novo*." *Id.*

The specific provision of Article 13.25 that Webber relies on was enacted by the legislature for the purpose of addressing "situations in which a person can be victimized and feel all the effects of certain computer crimes in a location remote from where the offender acted in violation of the law," such as circumstances in which an offender from another state harassed a Texas victim online and could not be prosecuted under the other state's law, to ensure "that

24

crimes that victimized Texans could be prosecuted in Texas." *See* House Comm. On Criminal Jurisprudence, Bill Analysis, Tex. S.B. 222, 83rd Leg., R.S. (2013). In other words, the provision was added "to better protect victims" by addressing offenses where a victim resides in a different jurisdiction than the offender. *See* Senate Comm. On Criminal Justice, Bill Analysis, Tex. S.B. 222, 83rd Leg., R.S. (2013). Moreover, Article 13.25 uses the word "may" rather than mandatory language when describing the four locations where prosecutions under Chapter 33 of the Penal Code might occur, *see* Tex. Code Crim. Proc. art. 13.25, indicating that the statute was designed to expand rather than limit venue options under Chapter 13 of the Code of Criminal Procedure, *see* Tex. Gov't Code § 311.016(1) (explaining that use of term "'[m]ay' creates discretionary authority or grants permission or a power"); *see also Amador v. State*, Nos. 03-16-00681—00682-CR, 2018 WL 4844713, at *4 (Tex. App.—Austin Oct. 5, 2018, no pet.) (mem. op., not designated for publication) (explaining that special venue statutes under Chapter 13 "expand the number of counties in which an offense may be prosecuted").

In this case, the investigating officers explained that the cell phone records and information from Webber's internet service provider did not establish Webber's location during the relevant times and that Webber could have been in Oklahoma or any Texas county. However, the evidence presented at trial indicated that Webber lived in Milam County. Given the testimony establishing that it was unclear where Webber was at the time in which the crimes occurred, we conclude Articles 13.01 and 13.19 were proper venue statutes because they address the proper venue when part or all of an offense occurs outside of Texas and when it is unclear which county in Texas the offense occurred. *See* Tex. Code Crim. Proc. arts. 13.01, .19; *see Amador*, 2018 WL 4844713, at *5 (noting that article 13.19 applies where there is uncertainty about where offense occurred). Moreover, although the evidence showed that M.R. lived in

Rockdale, no evidence was presented establishing that Rockdale is in Milam County. In light of the language and purpose of Article 13.25, we conclude that the trial court did not err by denying Webber's request for an instruction under Article 13.25.

Having determined that there was no jury-charge error, we need not address whether Webber was harmed, and we overrule his fourth issue on appeal.

## CONCLUSION

Having overruled Webber's issues on appeal, we affirm the trial court's judgments of conviction.

_____
Thomas J. Baker, Justice

Before Justices Baker, Theofanis, and Jones*

Affirmed

Filed: March 23, 2023

Do Not Publish

*Before J. Woodfin Jones, Chief Justice (Retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code § 74.003(b).